**KNIGHT et al. v. WERTHEIM & CO., et al.**
**No. 82, Docket No. 20349.**

Circuit Court of Appeals, Second Circuit.

Dec. 31, 1946.

T. Roland Berner, of New York City (M. Victor Leventritt and James H. Mathias, both of New York City, of counsel), for appellants Knight and Doyle.

John Gerdes, and Gerdes & Montgomery, all of New York City (W. Randolph Montgomery, of New York City, of counsel), for appellees Wertheim & Co. and others.

Louis G. Bernstein and Scribner & Miller, all of New York City (Frank R. Bruce, of New York City, of counsel), for appellee Committee of Debenture Holders.

Henry S. Hooker, of New York City, (Irving L. Schanzer, of New York City, of counsel), for appellee Duncan.

George T. Barker and Hardy, Stancliffe & Hardy, all of New York City, for appellees Hudson Maguire, and others.

George Zolotar, of New York City and Roger S. Foster, Sol., and Robert S. Rubin, Asst. Sol., both of Philadelphia, Pa. (Meyer Feldman, of New York City, of counsel), for Securities and Exchange Commission.

Wagner Quillinan, Wagner & Tennant, of New York City (Sidney R. Nussenfeld and Lewis A. Pinkussohn, both of New York City, of counsel), for appellee Granger Committee for Debenture Holders.

Olin, Murphy & Redmond, of New York City, for appellee Empire Trust Co., as indenture trustee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal and two other appeals are from an order and two ancillary orders of the Bankruptcy Court, refusing to submit an "alteration" of a plan of reorganization to the creditors and shareholders of the debtor. The debtor is the owner of a large office building in lower Manhattan known as the Equitable Office Building, which on April 10, 1941, filed a petition for reorganization under Chapter X, 11 U.S.C.A. § 501 et seq. It had but one class of capital stock, which was without par value and consisted of 862,098 shares; it had issued bonds of $16,000,000, secured by a first mortgage; second mortgage bonds, of which only $3,000 remained outstanding; and $4,754,000 outstanding of five per cent debentures, due May 1, 1952. The court approved the petition on the day it was filed; but it was not until nearly three years later—on February 24, 1944— that the trustee filed any plan of reorganization under § 169, 11 U.S.C.A. § 569. Various amendments were proposed to this from time to time thereafter; but the plan had taken substantially its present form by May 11, 1945.

It provided that the first mortgage of $16,000,000 should remain untouched; that the $3,000 remaining due on the second mortgage should be paid; that a new company should be formed which should issue to the debenture holders convertible income bonds for 60 per cent of their holdings, as well as 10 shares of new stock for every $100; that the claims of the unsecured creditors should be paid in full in cash; and that the old shareholders should receive new shares in the ratio of one to 10. The new convertible income bonds were to bear cumulative interest at five per cent, were to mature in 35 years and were to be secured by a second mortgage; the bondholders had the right to convert them into new shares, within two years after issue, on the basis of 16 for each $100; and, within three years after issue, on the basis of 10 shares for each $100. The authorized capital of the new company was to be 1,017,-993.8 shares, of a par value to be ascer-

tained by the trustee and approved by the court: 475,400 of which would be issued at once to the debenture holders, 456,384 would be reserved against the conversion privilege of the new bonds; and 86,209.8 shares would go to the old shareholders. Administrative and reorganization expenses were to be paid out of the cash in the hands of the trustees. On October 31, 1945, the current liabilities of the debtor were $242,000, together with $950,000 back interest upon the debentures.

Other amendments were proposed by creditors and shareholders after May 11, 1945, but on December 4, 1945, the court approved the plan under § 174, 11 U.S. C. A. § 574, as it had finally taken shape. Notice was then given under § 175, 11 U.S. C.A. § 575, "to all creditors and shareholders who are affected," and the plan came on for confirmation under § 221, 11 U.S. C.A. § 621, on May 13, 1946, when the judge entered an order of confirmation. He signed various auxiliary orders during June and July, which are not important; and on July 8, 1946, entered an order of "consummation." This was not the "final decree required by § 228, 11 U.S.C.A. § 628, which presupposes earlier "consummation" —performance—of the plan; it merely provided in detail the steps necessary to "consummate" the plan. Before the prescribed transfers had been made, two shareholders, Knight and Doyle, on July 11, 1946, filed the petition which is the basis of this appeal, and which proposed, as an "alteration" or "modification" of the plan, an offer, made to the judge and the trustee in a letter of the City Investing Company (a large real estate company). This offer was to give the old shareholders an option to buy the new company's shares at $4.50 a share; to underwrite the issue; to receive as a commission 69,686 shares; and with the money so raised, together with the debtor's liquid assets, to pay off the debentures, principal and interest. The option price was later raised to $5.50, and finally (on July 19) to $6; the offer was to expire on October 17, 1946.* The judge held extensive hearings at which attorneys representing a substantial number of shareholders appeared and urged the acceptance of the offer; and at which the debenture holders unanimously opposed it, as was readily understandable, since the price of the bonds had risen far above the amount of principal and interest. The court denied the petition in a short memorandum, as follows: "The deliberate and fully considered adjudication of a responsible court made and entered without objection on the part of any person in interest—and after all parties were afforded ample opportunity to be heard on the merits of the issues involved—and when they and the public—as they had a right to do—confidently relied upon its integrity, should be something more stable than a weather vane * * * For this reason, my consummation order of July 8, 1946, will stand. It follows that the application to reopen the reorganization proceedings of the debtor will be denied." It was from this order and two other orders, which it is not necessary here to consider, that Knight and Doyle have appealed.

The appellees argue that the appeal should be dismissed for two reasons: (1.) because the bankruptcy judge denied the motions, not for lack of power, but in his discretion; (2.) because the offer of the City Investing Company has now long since expired, and the whole controversy has become moot. We agree that the judge did not decide from lack of power, and that he exercised his discretion; indeed, we should have had to assume as much anyway, had not his opinion, just quoted, proved it. Therefore, the order may not be disturbed unless he overstepped the permissible limits of his discretion. We also overrule the other ground for dismissing the appeal: i.e., that it has become moot. It

---

* On November 1, 1946, it would have taken $5,942,500 to pay the debentures with interest; the sale of 862,098 shares at $6 would result in $5,172,588; the deficit of $769,912 would be paid by the cash balance, estimated on November first at $942,500, leaving a cash balance of only about $170,000 as of that date. The estimated income for each month was $315,000, and the estimated operating expenses for the five months of November to March inclusive, were $104,000 a month.

is indeed true that the offer of the City Investing Company has long since lapsed, and that at present there is no outstanding offer; but it does not follow that a new offer may not be made of enough cash to pay off the debentures. That depends upon whether the City Investing Company, or some other company will make such an offer; we cannot say on this record that the value of the debtor's property has so fallen in the past six months that the equity has for practical purposes disappeared; and indeed the strong resistance of the debenture holders to the appeal suggests that it has not.

 The first question on the merits is whether the judge had the power, as he supposed, to submit the offer to the shareholders, because, if, as the appellees insist, he had not, it makes no difference whether he did not keep within the bounds of a sound discretion. We agree that he did have the power. Chapter X requires that a plan shall first have the "approval" of the judge (§ 174) after the hearing provided in § 169 and § 170, 11 U.S.C.A. §§ 569, 570. The parties interested must then accept it at a second hearing as provided in § 174, after which it is ready for "confirmation" under § 221. It must then be performed, "consummated" (§§ 224–227, 11 U.S.C.A. §§ 624–627), and when "consummated," the judge must enter a "final decree" (§ 228), which discharges the debtor from all its debts, cuts off the shareholders, and discharges the trustee. The Act makes no provisions for any "order of consummation" such as the judge entered on July 8, 1946; and, although it is a convenient way of specifying exactly how the plan is to be performed, as we have already said, it is not to be confused with the "final decree." The order of "confirmation" is not conclusive, for § 222, 11 U.S.C.A. § 622, expressly provides that the plan may be "altered or modified" after, as well as before, the plan has been confirmed. If an "alteration" or a "modification" does not "materially and adversely affect the interests of creditors or stockholders," this may be done without further hearing; otherwise, if it does. It must be observed that, so far as concerns

merely the grant of power, the statute makes no difference between the periods before and after confirmation. That does not indeed mean that the fact of confirmation should play no part in the decision whether to use the power; but it does mean that confirmation is only a circumstance in the whole nexus of facts which will determine the question. Against this the debenture holders invoke our decision in Country Life Apartments v. Buckley,* and the decision of the Seventh Circuit in Diversey Building Corp. v. Metropolitan Trust Co.** In the first, the plan had provided for an outright sale of the property for cash at auction, and the "modification" required the creation of a new corporation, the shares in which were to be exchanged for claims against the debtor; in the second, the plan had been in operation for nearly eight years after confirmation; under it an old bond issue had been divided into two parts of different priorities; and the "modification" proposed an exchange of one of these new issues for preferred and common shares, and the outright cancellation of the other. We said in our opinion that there was a limit to what might be considered an "alteration" or a "modification" and that the proposal had exceeded it; and the Seventh Circuit spoke of the court's not having "jurisdiction" to act upon the proposal; we agree that, although there appear to be no limits to the changes which may be made in a plan before "approval," and indeed thereafter, until "its submission for acceptance" under § 179, 11 U.S.C.A. § 579, nevertheless any changes after submission must be to some extent congruent with the plan. We cannot, however, agree that there are narrower or more definite limits than this. There is nothing whatever in the joint report of the House and Senate Committee on § 77B, 11 U.S.C.A. § 207, to support such a conclusion. It is true that one clause of that report explained subdivision (f)—the precursor of § 222—, as directed to the correction of "errors, mistakes and omissions"; indeed, Congress may have had such modifications in mind as those which would not "adversely affect the interests of creditors or shareholders."

* 145 F.2d 935. ** 141 F.2d 65.

But the same clause begins with the words "matters not foreseen," and the proposed "modification" at bar was of that kind: it provided for "matters not foreseen." The plan as confirmed, went back at least to December, 1945, and more properly to May, 1945, and the rise in value of the debtor's property which prompted the offer of the City Investing Company could not have been then foreseen. Nor were the proposed changes themselves so radical as to fall within our decision in Country Life Apartments v. Buckley, supra.* The first mortgage was to remain as before; the balance upon the second mortgage was to be paid as before; a new corporation was to be organized with the same capital as before; the old shareholders were to have the same number of new shares as before; the current liabilities were to be paid as before. The only change was that the debenture bonds were to be paid in cash instead of refunded in new bonds and new shares, and that to do this the shares which had been reserved for them, either immediately, or to answer their conversion privilege, were to be sold to the old shareholders, taken up by the City Investing Company, or were to go to that company for its underwriting commission.

■ There remains the question whether the judge, having power to accept the "alteration," was free as matter of discretion to reject it. The only considerations which, so far as we can see, might properly have moved him to do so were (1.) a conflict of interest between the debenture holders and the shareholders; (2.) the fact that after long years of delay the reorganization had finally culminated in a confirmed plan, and (3.) doubts that the new company would be too much stripped of liquid assets to keep afloat. These we shall take up seriatim. We cannot agree that the debenture holders had as yet any legally protected interest in the property beyond the principal and accrued interest of their bonds, which could be weighed against the shareholders' interest. If in fact they had relied upon sharing in an equity in the property above that amount, it was without warrant of law and constituted no reason for depriving the shareholders of whatever chance might remain of realizing upon their property. The debenture holders were in truth not "adversely affected" by the proposed "alteration," within the meaning of § 222. It is of course true that there must come a time when a mortgagee or a creditor, who takes over his debtor's property in extinguishment of the debt, gets an indefeasible title, just as the mortgagee did in equity upon final decree of strict foreclosure; but Chapter X provides its own date when this shall occur; it is the date of the entry of the "final decree" under § 228. It is that decree which puts an end to "all rights and interests of stockholders" and discharges all "debts and liabilities" of the debtor. Until then creditors remain creditors; they have their claims and that is all they have; any "modification" which guarantees them principal and interest on those claims, secures all the rights that a court need regard. The offer of the City Investing Company of July 11, 1946, did that; and we answer the first question that there was no party to the reorganization whose interest the judge could properly weigh against that of the shareholders, except in so far as by further delay the debenture holders' claims might be imperiled.

■ Next as to that delay and as to the fact that the plan had been confirmed. We recognize that, except upon the extremest provocation, courts will not upset a judicial sale at auction, upon the ground that a new bidder has appeared who offers more than the knock-down price. Morrison v. Burnette,* In Re Burr Manufacturing & Supply Co.,** Currin v. Nourse.† This unwillingness results from the effect upon such sales of knowing that a prospective bidder may abstain from bidding at the auction, may bide his time, and may then outbid the price at which the property has been struck down. That possibility tends to chill bidding at the sale, to dispose of the property by later competition on successive bids, and thus to defeat the very purpose of an auction, which is to fetch together all those who may be interested to

---

* 145 F.2d 935.
* 8 Cir., 154 F. 617, 624.

** 2 Cir., 217 F. 16.
† 8 Cir., 66 F.2d 137, 140.

buy and to set them against each other with whatever stimulus that may provide, as opposed to other kinds of sale. None of this applies to a plan of reorganization. True, that presupposes a concourse of conflicting interests—creditors of different priorities and shareholders of different ranks—whose compromise in the plan itself will be a result of competition. But there is no occasion when all are brought together and pitted against each other in a cash bidding: i.e., there is no occasion equivalent to an auction whose finality must be preserved if its advantages are to be preserved.

■ That does not indeed mean that delay in presenting an "alteration" or "modification" can never be relevant to its approval; we recognize the force of what the judge said in his opinion, which we have quoted, that the considered judgment of a court is not to be lightly put aside. But there can be considerations more imperative than the despatch of judicial business, even after delays so long as existed in this case. If the legally protected interests of any opposing parties are fully preserved, it is not a good reason to deny others any reasonable chance to protect their own interests that they have been long in asserting them. Had it been shown that the equity which was presupposed in the proposal of the City Investing Company had existed for a substantial time before July 11, 1946, there would be force in what the judge said in his opinion; but that was not shown; so far as appears, the equity may have arisen from a recent increase in the value of the property. Delay would not cost the debenture holders anything, for the proposal would give them interest until payment upon the full face of their bonds instead of upon 60 per cent of it; and the property was adequate security.

■ The last question remains; whether the new company would have been so stripped of quick assets that it might prove unable to carry on its business: i.e., that its cash resources would have been at the danger point. This must be judged on the assumption that the debenture bonds would be paid off, and that the new company would owe nothing but its first mortgage bonds. There would be a little over a million shares of common stock behind the mortgage of which the old shareholders would hold 86,000, the City Investing Company about 70,000 and the remainder would be distributed between the two, according as the shareholders should have taken up their options. The amount of cash which would be left to carry on was necessarily speculative; but the prospect was undoubtedly of a much smaller margin than had been the company's habit in the past; perhaps it was so small that a majority of the shareholders would have preferred to take 10 per cent of their holdings, and let the option go. That was, however, not a question for the debenture holders or for the trustee; indeed, it was not even a question for the judge. It was for a majority of the shareholders, and for them alone, to decide whether they preferred to accept the chance of being able to pay the interest on the first mortgage; and if they chose to do so, the judge would not have been justified in interfering in their choice; it was a practical decision within the powers of the majority; Chapter X does not give to the bankruptcy court any larger supervision in such a situation than if the new company had been set up and sent upon its way.

■ In conclusion therefore we can see no reason why the "alteration" should not have been submitted under § 222; and we hold that it was an error to deny the petition. Upon remand the question will be whether the City Investing Company—or for that matter any other equally responsible underwriter—will within a reasonable time come forward with a reliable and practical offer which will produce enough money to pay off the debenture bonds, principal and interest. If such an offer is forthcoming, it should be treated as a permissible "alteration" or "modification" of the plan under § 222, and the judge should "approve" it, provided he finds that it satisfies the conditions we have just mentioned. Thereupon he should fix a hearing for its "consideration" under § 222, and "a subsequent time for its acceptance or rejection" under §§ 222 and 223, 11 U.S.C.A. §§ 622, 623. Since the only persons whose interests can be

"adversely affected" by such a change in the plan, are the shareholders, it follows that their votes alone will determine acceptance or rejection. Section 222 speaks in the alternative: creditors *"or"* shareholders. It is not necessary to say anything of the two ancillary orders; they necessarily fall with the main order.

Orders reversed.