### SMITH et al. v. SAVE-RITE DRUG STORES.

### In re SAVE-RITE DRUG STORES.
### No. 4026.

United States Court of Appeals
Tenth Circuit.
Dec. 15, 1949.

---

Alvin I. Smith, Salt Lake City, Utah, for appellants.

D. A. Skeen and J. Lambert Gibson, Salt Lake City, Utah, for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

Save-Rite Drug Stores, a Utah corporation, was duly adjudged a bankrupt on August 30, 1949. D. K. Porter was duly elected trustee. On October 4, 1949, the referee in bankruptcy entered an order directing the trustee to sell all the property and assets of the bankrupt upon reasonable notice and subject to confirmation by the court. The trustee duly gave notice of the sale by publication in the Salt Lake Tribune, a daily newspaper having a general circulation in the inter-mountain west, and by mail to prospective bidders. The notice described the property to be sold and stated that sealed bids would be received by the trustee at his office in Salt Lake City, Utah, up to 2 p.m., November 1, 1949; that no later bids would be received except and unless the sale should not be confirmed on the highest and best sealed bid received; and that the bids might be for the whole or any part of the property described in the notice. Seven bids were received. Six were for a portion of the property. One was a combination bid for all of the property and for designated portions of the property. Two other bids were tendered for the entire property. The sealed bids were opened by the trustee on November 1, 1949, at 2 p.m. The highest bid was that of Alvin I. Smith,[1] Trustee, for Salt Lake Surplus, Inc., who bid $23,789. Save-Rite Drug Stores,[2] a New Mexico corporation, bid $20,736.96. The trustee reported the sale to the court. C. D. Simpson Company had bid $2,250 for an air-conditioning unit and $100 for a dumb-waiter elevator. Smith agreed that the air-conditioning unit and dumb-waiter elevator might be sold to Simpson for $2,350, and that amount credited on his bid of $23,789. The appraised value of the property was $27,608.62. Smith's bid was approximately 85 per cent of the appraised value. The trustee made a report of the sale to the court in which he certified that the bid of Smith was the highest and best bid and was a fair price for the property, and recommended that the bid be confirmed. Thereafter, on November 11, 1949, after due notice thereof by publication, the matter came on for hearing before the District Judge, the office of the referee in the Utah District having become vacant and not having been filled, upon the matter of the confirmation of the sale. Save-Rite of New Mexico asked leave to submit a further bid without stating the amount thereof. Over objection, the trial court ruled that additional bids might be received while the matter was pending for confirmation of the Smith bid. Thereupon, Save-Rite of New Mexico made a bid of $25,000 for the entire property in which they stated that they

1. Hereinafter called Smith.

2. Hereinafter called Save-Rite of New Mexico.

would agree to sell the air-conditioning unit and the dumb-waiter elevator to the Simpson Company for $2,350. The second bid of the Save-Rite of New Mexico was $1,211, or approximately 5 per cent, in excess of the Smith bid. Representatives of certain creditors objected to the receipt of further bids and joined in the petition of Smith for the confirmation of the sale to Smith. Smith moved to strike the second bid of Save-Rite of New Mexico on the ground that there had been no objections filed to the confirmation and that Save-Rite of New Mexico was the second highest bidder at the sale conducted by the trustee on November 1, 1949. The court overruled the motion, received the bid of Save-Rite of New Mexico, and continued the matter until November 14, 1949, at 2 p.m., for the court to receive further bids. No other notice was given that further bids would be received. On November 16, 1949, no further bids having been received, the court confirmed the sale to Save-Rite of New Mexico for $25,000. Smith has appealed from the refusal of the court to confirm the sale to him and from the order confirming the same to Save-Rite of New Mexico.

It will be observed that the court did not reject all of the bids at the trustee's sale and direct a new sale. Whether the court might have done so is not here presented. What the court did was to permit an unsuccessful bidder at the trustee's sale to submit a higher bid while the matter was pending for confirmation without first denying the petition for confirmation of the sale to Smith. The appeal was docketed December 5, 1949. Both parties requested expeditious disposition of the matter because of the fact that delay would result in substantial decrease in the value of the property which largely consisted of merchandise. The matter came on for hearing on December 14, 1949.

Counsel for Save-Rite of New Mexico rely on Reid v. King, 4 Cir., 157 F.2d 868. In that case, corporate shares in the bankrupt estate had been appraised in November, 1941, at $10 per share. In October, 1942, the court directed a sale of such shares by the trustee in bankruptcy. For reasons not disclosed in the opinion, the sale was delayed until December, 1945, when the trustee solicited sealed bids of the corporate shares by public advertisement. The notice stated that bids would be received until December 17, 1945. Only one bid was tendered, that of T. J. Roberts, for $11.10 per share for certain of the stock and $10.55 for the remainder of the stock, aggregating $28,543.55. On December 22, 1945, before the trustee had filed a report of sale, one King tendered a bid of $15 per share, or $38,640, which was more than 35 per cent in excess of the Roberts bid. On January 2, 1946, the trustee reported the two bids to the court. The court ordered all the bidders to appear and show cause why one of the bids should not be accepted. The referee found that the Reid bid was grossly inadequate, and on January 22, 1946, deferred the matter to January 29, 1946, and invited the bidders to submit bids in excess of $15 per share. No further bids were received and the referee ordered the bid of King to be accepted and confirmed the sale to him. The District Court confirmed the finding of the referee and the order confirming the sale. On appeal, the court held that the Reid bid was substantially inadequate and below the fair market value of the property and that, under the circumstances, the court was justified in accepting the Roberts bid and confirming the sale to him.

There, the Roberts bid was substantially in excess of the Reid bid. The appraisal had been made more than three years before the sale and there had been a substantial improvement in the economic situation in the meantime and the Reid bid was substantially inadequate. Here, there was no showing that the Smith bid was substantially inadequate or that the certification of the trustee that such bid was the fair value of the property was incorrect. Roberts was a late but not an unsuccessful bidder at the trustee's sale. Here, Save-Rite of New Mexico was an unsuccessful bidder at the trustee's sale. The second bid tendered by Save-Rite of New Mexico was not sufficiently in excess of Smith's bid at the public auction to indicate that Smith's bid,

which was 85 per cent of the appraised value of the property, was grossly inadequate.

A practice of permitting an unsuccessful bidder at a public auction, through sealed bids, after the amount of the highest and best bid at the auction has been disclosed, to submit a second bid when the matter comes on for confirmation of the sale, would tend to destroy the efficacy of auctions through sealed bids.

We are of the opinion that if the court, on a proper showing, had found that the Smith bid was inadequate and substantially below the fair market value of the property, it might have rejected all of the bids and ordered a new sale, but that the court did not do. It undertook to keep the confirmation of the Smith bid open until it could ascertain if a higher bid could be obtained. That, we think, was error. We think, under the circumstances here presented, the principles announced In Re Stanley Engineering Corporation, 3 Cir., 164 F.2d 316, 319, certiorari denied Root v. Galman, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed 417 are applicable. The court there held that it was an abuse of discretion for a bankruptcy court to fail to confirm a sale which was properly conducted, which produced a bid in excess of the appraised value of the property, in the absence of unfairness, fraud, or mistake, or gross inadequacy of price, where the only apparent reason for the court's action was its desire to obtain the benefit of a bid, approximately 10 per cent in excess of the highest bid at the auction, made by another at the confirmation hearing. In the opinion in the Stanley Engineering case, the court said that experience had demonstrated that " * * * nothing will more certainly tend to discourage and prevent bidding" at judicial sales "than a judicial determination that the highest bidder may be deprived of the advantage of his accepted bid by an offer of another person, subsequently made, to bid higher on resale. * * * If the court decided not to confirm, but rather to entertain other offers,

every consideration of fairness dictated that the public at large be given notice to that effect, so that all might have had an equal opportunity to make or increase their bids if they so desired. See Everett v. Forst, 1921, 50 App.D.C. 215, 269 F. 867, 869. To sanction the method adopted by the bankruptcy court here, it seems to us, would be a retrogression to the old, now-repudiated English rule. It would sap the confidence in judicial sales and give an unfair advantage to those who choose to conduct their negotiations only after they ascertain the limits of their competitors' bids, rather than to pit their bargaining power against that of those who accept the invitation of the court to attend and bid at public sales."[3]

The cause is remanded with instructions to vacate the order confirming the sale to Save-Rite of New Mexico, and to confirm the sale to Smith. The mandate will issue forthwith.

---

3. See, also, Knight v. Wertheim & Co., 2 Cir., 158 F.2d 838, 843.