## J. J. SUGARMAN CO. v. DAVIS.
### No. 4573.

United States Court of Appeals
Tenth Circuit.
April 21, 1953.

Edward E. Pringle, Denver, Colo. (Max D. Melville and Walter F. Scherer, Denver, Colo., on the brief), for appellant.

Donald W. Hoagland, Denver, Colo. (Richard M. Davis and Byron R. White, Denver, Colo., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal by appellant, J. J. Sugarman, a bidder at a sale of personal property of the Victor-American Fuel Company, engaged in a reorganization proceeding under Chapter X of the Bankruptcy Act as amended, 11 U.S.C.A. § 501 et seq., from an order of the court confirming a sale of the personal property in question to the Learner Company of Oakland, California.

The facts out of which this appeal arose are these. The court entered an order directing the trustee to sell the property

involved at public sale. It directed him to publish notice of sale to be held on July 11, 1952; that sealed bids would be received; that on July 11 all bids would be opened and that he proceed with the approval of the court to accept or reject any such bids submitted. The order provided that any bid received was subject to acceptance or rejection with the approval of the court. The notice of sale as published was in conformity with these provisions of the order of sale.

Six sealed bids were received. These were opened on July 11 by the referee, acting as special master. Appellant's bid of $58,800 was high. The next high bid by K. S. Barnett Company was $58,250. The trustee requested one week within which to consider the bids and make recommendations to the special master. The special master fixed July 17 as the date on which he would take up consideration of the bids. He announced that if at that time the recommendation was against the acceptance of the high bid or if it was not confirmed the property would then be reoffered on notice to all the bidders. Following the action of the special master on July 11, K. S. Barnett returned to his office in Denver and immediately wrote a letter to the trustee, stating that in bidding his company had mistakenly failed to take into consideration certain pit cars; that with these cars included it would have bid $3,500 more and that therefore the company was then making a new bid of $61,750. A copy of this letter was sent to the special master. Just before consideration of the bids was resumed on July 17, National Metals Company submitted a bid of $63,000. When consideration of the bids was resumed on July 17, the master announced the receipt of the Barnett letter and the new bid from National Metals Company. After further discussion, it was determined that further bids might be submitted on or before July 24 and it was ordered that the hearing be adjourned to such time. Written notice was given to all bidders, including appellant, that further bids might be be submitted and that they would be opened on July 24.

On July 22 appellant filed written objections to the action of the master permitting the filing of further bids. At the July 24 meeting three bids higher than appellant's bid at the July 11 meeting were received. Learner Company's bid of $70,794 was high and the trustee recommended to the master that it be accepted.

In his report to the court, the master reported in detail the steps taken by him as outlined above and recommended that the sale to Learner Company be approved and confirmed. Appellant appealed from the order of the master of July 17 and July 24 and also excepted to the report and recommendations of the trustee and to the report and recommendations of the special master. The court overruled all objections, approved the report and recommendations of the special master, confirming the sale to Learner Company, and ordered the execution of a bill of sale.

The ground urged for reversal is that it was an abuse of discretion for the special master and the trial court to refuse to accept appellant's high bid of $58,800 at the July 11 sale and permit further bidding and accept the subsequent bid of $70,794 by Learner Company. It is urged that in the absence of fraud, mistake or gross inadequacy in the bidding, rejecting all bids, permitting the submission of later bids, and accepting a later and higher bid and confirming a sale based thereon constitutes an abuse of discretion. We do not think that the applicable principal of law is as broad as stated by appellant, when sought to be applied to the facts in this case. Neither do we feel that appellant's authorities sustain this broad contention.

It is well established by a unanimous line of decisions that the integrity of judicial sales must be protected. It has been said time without number that refusing to confirm a sale to a high bidder merely because an intervening higher bid has been received is the surest way to destroy confidence in judicial sales and defeat the purpose sought to be accomplished thereby to realize the greatest amount from such sales to those entitled to receive the proceeds thereof. This principle was an-

nounced in the early case of Jacobsohn v. Larkey, 3 Cir., 245 F. 538, 541, L.R.A.1918C, 1176, where the court said, "The rule is that mere inadequacy of price is not a sufficient ground for setting aside a judicial sale; but when the inadequacy is so great as in itself to raise a presumption of fraud or to shock the conscience of the court, it becomes gross inadequacy, and is a sufficient ground." And in Smith v. Save-Rite Drug Stores, 10 Cir., 178 F.2d 507, 510, we said that "A practice of permitting an unsuccessful bidder at a public auction, through sealed bids, after the amount of the highest and best bid at the auction has been disclosed, to submit a second bid when the matter comes on for confirmation of the sale, would tend to destroy the efficacy of auctions through sealed bids."

But in these cases as well as in the cases relied upon by appellant in which this principle was laid down a sale was had, a bid had been accepted, and the question was whether such sale should be confirmed or whether it should be rejected and a subsequent higher bid should be accepted and a sale based thereon be confirmed.[1] Illustrative of this statement is our case of Smith v. Save-Rite Drug Stores, supra, where the high bid at the sale was accepted and reported to the court with a recommendation that it be confirmed. We called attention that what the court did was to permit a subsequent higher bid while the matter was pending for confirmation on the original bid without first denying confirmation of the sale to the original bidder.

■ Where one's bid has been accepted, he has a vested interest which under the decisions may be destroyed only for the most cogent of reasons, such as fraud, or conduct which in effect amounts to fraud. But as has been said many times, the mere fact that someone comes forward and offers to bid more will not be tolerated because it is an invasion of a right acquired by the successful bidder at a free and open sale and for the further and even more weighty reason that permitting this to be done would undermine confidence in judicial sales and thus defeat the end sought to be obtained, the protection of estates being thus liquidated.

■ In re Glas-Shipt Dairy Co., 7 Cir., 239 F. 122, upon which appellant relies, is not in point. All that was held there was that a sale through bankruptcy proceedings is a judicial sale subject to the same rules as an auction sale and that a bid may be withdrawn before acceptance.

■■ Whether a high bidder at a judicial sale has a right to insist on the acceptance of his bid was considered by the Supreme Court in Blossom v. Milwaukee and Chicago Railroad Company, 3 Wall. 196, 70 U.S. 196, 18 L.Ed. 43. The court quoted with approval from Addison on Contracts to the effect that biddings at an auction sale were mere offers that may be retracted at any time "before the hammer is down and the offer has been accepted." It also quotes from Story on Sales dealing with ordinary auction sales "that the seller may withdraw the goods or the bidder may retract his bid at any time before they are struck off," and the reason assigned for the rule is that so long as the final consent of both parties is not signified by the blow of the hammer there is no mutual agreement to a definite proposition. The court states further that, "Judicial sales made under the decretal orders of courts of chancery, are also, in this country, governed substantially by the same rules, * * *." The court then held that a high bidder at a judicial sale, whose bid had not been accepted, could not object to a postponement of the sale and to its subsequent abandonment.

What has been said in the above case applies especially to a sale under an order expressly permitting the right to reject all bids and notifying prospective bidders in the published notice that bids will be received subject to that condition. In Shipe

---

1. The only case cited by appellant which does not fit squarely within the above statement is Knight v. Wertheim & Co., 2 Cir., 158 F.2d 838. This case involved a corporate reorganization proceeding under Chapter X of the Bankruptcy Act and the facts involved there were completely different from the facts present here.

v. Consumers' Service Company, 7. Cir., 29 F.2d 321, the highest bid was accepted conditionally, the condition being that if before confirmation a higher bid were received, the receiver would recommend that the sale to the bidder at the first sale be not confirmed. Such a bid was received and the recommendation to the court was that the sale be confirmed to a subsequent bidder. This was done and on appeal the judgment was affirmed. On appeal the court pointed out not only that the original bid was accepted conditionally, but also that it was made under an order of sale expressly empowering the receiver to reject any and all bids.

 That is the precise situation we have here. The bidding was had pursuant to the order of the court, empowering the trustee and the court to reject any and all bids. The trustee never accepted appellant's bid. He asked a week's delay in which to consider the bids and make recommendations. This was granted by the master and at the July 17 meeting the matter was postponed to July 24 for the reception of new bids and all bidders, including appellant, were notified and given an opportunity to submit new bids. No effort was made to hold appellant on his bid and to keep open the question of confirmation of the sale to him if no higher bid was secured. In effect all July 11 bids, including appellant's, were rejected.

Affirmed.