Matter of **MARATHON FOUNDRY & MACHINE COMPANY**, Debtor.

**Jacob DYNER, Appellant,**

v.

**Joseph SCHWARTZ and Francis J. Curtis, Trustees of Marathon Foundry & Machine Company, and Intelectron, Inc., Appellees.**

**No. 11767.**

United States Court of Appeals Seventh Circuit.

Nov. 29, 1956.

Writ of Certiorari Denied March 25, 1957.

See 77 S.Ct. 669.

Jacob Cohen, Chicago, Ill., for appellant.

J. H. Schwartz, Chicago, Ill., for Jacob Dyner.

Thomas M. Thomas, Gerald G. Bolotin, Francis S. Clamitz, Henry S. Blum, Chicago, Ill., Manuel E. Cowen, Martin S. Gerber, Chicago, Ill., of counsel, for appellees.

Before DUFFY, Chief Judge, and MAJOR and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

This appeal by Jacob Dyner (sometimes called petitioner) represents the second challenge in this court to the confirmed sale of 32,126 shares, or approximately 70% of the outstanding stock of Bethlehem Foundry and Machine Company to Intelectron, Inc., the shares being an investment asset of the debtor, Marathon Foundry & Machine Company. The order under attack, both previously and at present, was entered May 27, 1955 *(nunc pro tunc* as of May 9, 1955), in a proceeding under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and provided for the sale of the Bethlehem stock unless certain enumerated conditions were complied with. There was no compliance, and the court, on July 28, 1955, entered an order directing the trustees to consummate the sale of the Bethlehem stock to Intelectron, Inc. for the sum of $910,129.58, in accordance with its order of May 27, 1955.

On a previous appeal by the debtor this court affirmed the order, 228 F.2d 594. Our opinion in that case contains a rather complete statement of the situation as it existed at that time and in the interest of brevity reference is made thereto. It is pertinent to note that the essential issue decided on that appeal was that the

District Court had the power to authorize and approve the sale of the Bethlehem stock to Intelectron and that it did not abuse its discretion in so doing. Application for certiorari was made to the Supreme Court, which was denied. Marathon Foundry & Mach. Co. v. Schwartz, 350 U.S. 1014, 76 S.Ct. 659. Thereupon, this court, on April 17, 1956, directed issuance of its mandate to the District Court.

Petitioner in his brief states the contested issues as follows: "1. Whether a district court in a proceeding under Chapter X of the Bankruptcy Act has the authority to set aside its confirmed sale of an asset of the debtor because of gross inadequacy of price? 2. Whether a district court in a proceeding under Chapter X of the Bankruptcy Act has the authority to set aside its confirmed sale of an asset of debtor, which asset was worth more than $1,000,000, where there was no advertisement of the sale and the sale price was inadequate? 3. Whether the price at which Bethlehem shares were sold to Intelectron, Inc. was grossly inadequate? 4. Whether the price at which the Bethlehem shares were sold to Intelectron, Inc. was inadequate and whether the failure to advertise the sale contributed to such inadequate price?"

A statement of the proceedings subsequent to our mandate appears to be in order. On April 20, 1956, a petition was filed by Mitchell Continental Corporation (hereinafter referred to as Mitchell), in which it was recited that an offer had been made to the trustees to purchase the Bethlehem stock in controversy at a price of $31.33 per share (a total amount of $1,006,507.58), and that a check in the amount of $50,000 accompanied the offer. The offer of Mitchell was referred to a referee acting as special master and hearings were had thereon.

While this matter was under consideration and on April 23, 1956, a petition was filed with the special master by Jacob Dyner (instant appellant), which contained a detailed recital of previous proceedings and in which it was represented that on February 10, 1956, he entered into an agreement with Thompson-Starrett Co., Inc. (hereinafter referred to as Thompson), by which the latter agreed to make available to the debtor the sum of $1,100,000, to be utilized in connection with other funds in the hands of the trustees in the payment of all claims against the estate, together with administrative expenses, and that a certified check in the amount of $100,000 accompanied the offer. The petition further recited that inasmuch as the offer might not be sufficient to pay all claims and expenses, Thompson had agreed to increase the amount available to the debtor to $1,300,000. It also was stated in the petition that Thompson agreed to make such amounts available only upon the condition that the Bethlehem shares be sold to Thompson but that the latter withdrew its offer when advised by its counsel that no plan of reorganization could be formulated which would permit the debtor to retain such shares in view of the order of May 27, 1955 (the order under attack). Thereupon, Thompson requested return of its check for $100,000. The petition prayed that the court extend the time for filing a plan of reorganization to May 15, 1956, that in the interim the trustees be restrained from delivering the shares of Bethlehem stock to Intelectron and that upon approval of the plan to be submitted, the court vacate its order of May 27, 1955, authorizing the sale of the Bethlehem stock.

On May 7, 1956, Jacob Dyner filed another petition in which reference was made to the offer by Mitchell to purchase the Bethlehem stock for $1,006,507.58, and stated that at a hearing on the Mitchell petition Intelectron had offered to pay to the trustees, upon delivery of the Bethlehem shares, an additional sum of $100,000, and to waive accrued dividends in the amount of approximately $97,000. The petition stated that Dyner as the owner of all the shares of the debtor desired to present a plan of reorganization (a copy of which was attached to the petition), which provided for the payment in full of all creditors of the debtor and of the estate, together with the expenses

of administration. There was also presented a telegram dated April 23, 1956, from J. N. Doroshaw for Thompson, a copy of which was attached to the petition, which stated, "This will authorize you to deposit with the court our check for one hundred thousand dollars, and we will continue with our agreement with Jacob Dyner to furnish the additional one million dollars, subject to certain minor changes agreed upon with Mr. O. Biller."

The offer of Thompson, as stated in the petition, was to the effect that it would purchase the Bethlehem shares from debtor in exchange for 77,055 of its cumulative convertible preferred stock, and 37,367 shares of its common stock, the said shares to be ascribed a value of $15 for the preferred and $5 for the common. In addition, Thompson proposed to lend the debtor the sum of $1,100,000 in cash, and proposed that a dividend of $3.30 per share be declared on the Bethlehem shares and in the event that no dividend be declared, Thompson would pay to the debtor $106,015.80 in cash. Also the agreement with Thompson provided, so the petition stated, that a claim of Bethlehem against the debtor in the amount of $143,000 would be waived. Petitioner proposed to personally make available $100,000, if required, to pay claims and expenses of administration. Petitioner by adding these various sums comes up with the result that the debtor will be securing $1,841,675 from Thompson subject to the latter's loan of $1,100,000, and predicated thereon states in his petition: "The offer of Thompson-Starrett represents more than twice the bid of $910,000 made by Intelectron, Inc. for the Bethlehem shares; and the bid of Intelectron is grossly inadequate and it would be unconscionable to permit the proposed sale of the Bethlehem shares to be concluded with Intelectron, Inc."

Petitioner prayed that the order of May 27, 1955 be set aside, as well as all orders entered subsequent thereto relating to the purported sale of Bethlehem shares, and that the trustees be directed to secure the adoption of the plan of reorganization submitted by petitioner, or, in the alternative, that upon the deposit of such sums as may be required to pay all claims and expenses of administration, the court dismiss the proceedings and return the shares of Bethlehem stock to petitioner. In addition to the telegram and the proposed plan of reorganization already referred to, there was attached to the petition the offer of Mitchell, previously shown, to purchase the Bethlehem shares for the amount of $1,006,507.58. It is significant that the purported agreement with Thompson was not shown or produced. Its existence depends entirely upon the allegations of Dyner's petition, together with any corroboration which may be found in Thompson's uncertain and vague telegram of April 23, 1956.

The hearing on the offer of Mitchell, previously commenced by the special master, was continued after the filing of the two petitions by Dyner, and from then on all petitions were considered by the master. The master in his report to the court recommended that the Mitchell offer be denied, as well as the two motions by Dyner, and that the trustees be instructed to carry out the mandate of the Court of Appeals. Dyner objected to the report of the special master. After a hearing in which all interested parties were heard or given an opportunity to be heard, the court, on May 18, 1956, entered its order overruling the objections of Dyner and approving the report of the special master. It is from this order that the appeal comes to this court.

■ Petitioner argues two propositions of law, allegedly supported by cited cases, (1) a confirmed judicial sale may be set aside for gross inadequacy of price and (2) inadequacy of price accompanied with other circumstances having a tendency to cause such inadequacy will justify setting aside a confirmed judicial sale. It is evident that the only difference in the two propositions is that by the second he couples inadequacy of price "with other circumstances." The other circumstances refer to the contention that the sale was inadequately advertised, which resulted in a paucity of bidders. The same cases are cited by peti-

tioner in support of both propositions: In re Jewett & Sowers Oil Co., 7 Cir., 86 F.2d 497, 498; Slocum v. Edwards, 2 Cir., 168 F.2d 627, 630; Webster v. Barnes Banking Co., 10 Cir., 113 F.2d 1003, 1005, and Graffam v. Burgess, 117 U.S. 180, 191–192, 6 S.Ct. 686, 29 L.Ed. 839. In our view, neither these cases nor any other of which we are aware supports the proposition that a confirmed sale will be set aside for gross inadequacy alone or for gross inadequacy coupled with any other circumstance absent fraud or mistake. In fact, petitioner's counsel in argument to the District Court on his objections to the master's report stated, "This is a very serious issue. I have not been able to find a case on it. I don't think there is a case on it, but I think it is a case which merits much thought and some pioneering." True, statements may be found in some of the cases, including those relied upon by petitioner, which, standing alone, apparently support his contention; however, it is axiomatic that statements in an opinion must be considered in the light of the issues under consideration in connection with the facts relevant thereto.

Now, a brief comment regarding the cases relied upon by petitioner, as above cited. In the Jewett case this court affirmed a decree of the District Court which set aside a confirmed sale but it clearly appeared that the trustee had conveyed by mistake a vastly larger interest than had been offered for sale, and consequently the purchaser received an interest greater than his bid was intended to include. After pointing out this mistake we stated, 86 F.2d at page 498, "The disproportion between the sale price and the value of the contract sold * * shocks the conscience of the court," and we cited cases to the effect that " 'A sale will not be set aside for mere inadequacy of price unless that inadequacy be so gross as to shock the conscience, or unless there be additional circumstances against its fairness.' " As noted, however, these statements were made in a setting where admittedly a mistake had been made in what was intended to be sold as well as what the purchaser intended to acquire.

A similar situation existed in the Slocum case where an order confirming a sale was vacated. The court notes, 168 F.2d at page 630, "The question then concerns the situation where an order as entered did not express the sale intended by the parties." The court cites In re Burr Mfg. & Supply Co., 2 Cir., 217 F. 16, 21, in support of the statement that "inadequacy of price so great as to shock the conscience of the court was ground for vacating a sale already confirmed." The Burr case, however, is of no benefit to petitioner. There, the District Court confirmed a judicial sale, set it aside and ordered the property resold to a substantially higher bidder. The Court of Appeals reversed, holding that it was error to set aside the order of confirmation. The court stated, at page 21: "Before confirmation, if the inadequacy of the price be great, slight circumstances of unfairness on the part of the party benefited will be sufficient to prevent confirmation, and will justify the opening of the sale for further bids. * * * But the case is different after the sale has been confirmed, and the court below seems to have lost sight of this distinction. After a sale has been confirmed, the court and the successful bidder are regarded as occupying the relation of vendor and purchaser in an executed sale, and nothing is sufficient to avoid it which would not set aside a sale of like character between private parties."

In Webster, the court does state in effect that a judicial sale may be set aside if the inadequacy in price is so great as to shock the conscience of the Chancellor, providing such inadequacy is accompanied by other circumstances having a tendency to cause such inadequacy or indicating any apparent unfairness or impropriety. In that case, however, a referee made a sale and subsequently set it aside. The action of the referee was confirmed by the court. Moreover and more important, the court was considering a fraudulent sale in which all but the

beneficiaries of the fraud were foreclosed from bidding.

The last case cited by petitioner, the Graffam case, involved a fraudulent sale and was decided on that basis.

The master, and apparently the District Court, in addition to our previous opinion, 228 F.2d 594, relied upon J. J. Sugarman Co. v. Davis, 10 Cir., 203 F. 2d 931, and In re Stanley Engineering Corp., 3 Cir., 164 F.2d 316. The Sugarman case, as here, involved a proceeding for reorganization under Chapter X. A sale to the highest bidder was approved both by the District Court and on review. In so doing the Court of Appeals made the following pertinent observation, 203 F.2d at page 933: "Where one's bid has been accepted, he has a vested interest which under the decisions may be destroyed only for the most cogent of reasons, such as fraud, or conduct which in effect amounts to fraud. But as has been said many times, the mere fact that someone comes forward and offers to bid more will not be tolerated because it is an invasion of a right acquired by the successful bidder at a free and open sale and for the further and even more weighty reason that permitting this to be done would undermine confidence in judicial sales and thus defeat the end sought to be obtained, the protection of estates being thus liquidated."

In the Stanley case the Court of Appeals reversed the District Court, which had refused to confirm a sale to the highest bidder. In doing so the court stated, 164 F.2d at page 320: "Applying the long-established legal principles enunciated in the cases cited to the facts in the instant case, it is plain that there was no justification for the bankruptcy court's failure to confirm the Galman bid made at the public sale and that it committed an abuse of discretion in failing to do so." Under the reasoning and result in the Stanley case, a reversal in the instant case would be in order if the District Court had refused to confirm the sale to Intelectron, the highest bidder.

■ Furthermore, even though we accord to petitioner the benefit of state-ments picked from cases here and there to the effect that a confirmed judicial sale will be set aside for gross inadequacy of price, either in itself or in connection with other circumstances resulting in such inadequacy, they are of no aid to him because there is no factual basis for the application of the principle. It appears to be conceded on all sides that adequacy of price must be determined as of the time of sale. It has been so held. Morrison v. Burnette, 8 Cir., 154 F. 617, 625. See also our previous opinion in this matter, 228 F.2d at page 598.

On the question of the value of Bethlehem shares the District Court found, as disclosed by the previous record in this court, that the shares in controversy had "a fair market value of $775,521.64," or $24.14 per share; also, that Metals Disintegrating Co. had made an offer of $25.00 per share, and that the highest and best bid was that of Intelectron in the total amount of $910,129.58, or $28.33 per share. The court further found that due notice of the sale had been given to all interested persons in accordance with the order of the court and that "it is in the best interests of this estate and the creditors thereof that the benefits attainable by the acceptance of the offer of Intelectron, Inc., be not lost because of the failure of parties herein to propose a fair and equitable plan which will insure, upon approval, acceptance and confirmation to the creditors of this estate, at least as great a return as the offer of Intelectron, Inc., will produce."

■ The finding as to value was based upon evidence conclusive in its nature. The court appointed an appraiser whose qualifications and integrity were not then or now challenged, who testified that the fair market value of the stock was approximately $775,521.64, or $24.14 per share. This expert in evaluation of corporate stock testified in detail as to the factors entering into his evaluation, such as the dividend history, the earning history, the book value and the nature of the industry. At the sale, Metals Disintegrating Co. renewed its bid of $803,150,

increased by Intelectron to $867,402. A Mr. Lebensfeld bid $875,433.50, increased by the bid of Intelectron to $900,-000. This bid was increased by Lebensfeld to $900,321.26, and again raised by Intelectron to $910,000. No higher bid was received and the stock was sold to Intelectron as the highest and best bidder. In addition, the previous record discloses that these shares were not listed on the Stock Exchange but had been sold shortly before the judicial sale in the over-the-counter market at $15.00 per share. Moreover, the only offer since made to purchase the shares for cash was that by Mitchell Continental Corp. on April 20, 1956 (as above shown) for the sum of $1,006,507.58, as compared with $910,129.58, the price at which they were sold to Intelectron almost a year previously. This increased offer by Mitchell represents only a little more than the dividends which the shares had accumulated since their purchase by Intelectron. This offer by Mitchell, acquiesced in if not sponsored by petitioner, corroborates rather than contradicts the court's finding as to value.

■ Petitioner stresses the fact that at the hearing before the special master on the Mitchell and Dyner petitions, Intelectron suggested that it would be willing voluntarily to pay an additional $100,000 for the immediate delivery of the Bethlehem shares. This suggestion was made with the express reservation that Intelectron was not waiving any right which it had acquired by reason of its purchase at the judicial sale. It is not apparent how this suggestion could have any bearing upon the value of the shares as fixed by the court almost a year previously. We do not know, of course, the purpose which prompted Intelectron to make this suggestion. Maybe it thought that the shares had increased in value in the meantime and its suggestion was in the interest of fairness. At that time Intelectron had been prevented by litigation from receiving delivery of property which it had purchased at a judicial sale almost a year previously. Its suggestion to pay an ad-

ditional amount may have been a peace offer, that is, to end the litigation and to acquire possession of property to which it had been entitled since the court's confirmation of the judicial sale. There is no basis for the suggestion that this offer by Intelectron, made with reservation, had any effect upon its legal rights. In re Stanley Engineering Corp., 3 Cir., 164 F.2d 316, 320.

■ Petitioner's contention in his petition filed May 7, 1956 (above referred to) that he made a bid of more than $1,-800,000, borders on the preposterous. In the first place, his offer was not to purchase the shares for that amount or any other. It represented a trading proposition with a third party, with no firm commitment from the latter. It was a proposal for reorganization which was just as much calculated to produce a gold brick as a gold mine. His request was for leave to submit this speculative and uncertain plan. The court, however, had previously fixed a date by which such plans were to be submitted. This was a limitation period which had long since expired. While we do not question but that the court had authority to permit the filing of Dyner's petition, notwithstanding its previously fixed time limit, it was entirely a discretionary matter.

The court in a colloquy with counsel, after holding that Dyner's petition was without merit, stated, " * * * and if the conscience of the Chancellor should be shocked at anything after a careful review of all of the transactions concerning the sale of this stock, the conscience of the Chancellor should be shocked at your petition." We think that was an appropriate observation.

■ Another point made by petitioner is that the sale was not adequately advertised. It is not disputed but that the form of notice under the applicable provision, Title 11, Chap. X, Sec. 516, was a discretionary matter with the court. It is argued, however, that more bidders would have been present if the sale had been more widely advertised. That is a matter of conjecture. The notice of

sale was given to all interested parties, including creditors and petitioner as the sole stockholder of the debtor, and it was published in one issue of the Wall Street Journal. As stated, the form of the notice is a matter within the discretion of the District Court. Frank v. Drinc-O-Matic, Inc., 2 Cir., 136 F.2d 906. Certainly there was no abuse of discretion and we think no basis for the contention that the debtor or anybody else was hurt because of any infirmity in the notice of sale.

■ Although we are not disposed to do so, we think this appeal could properly be disposed of adversely to petitioner on the basis of our previous decision. Petitioner cannot escape the effect of that decision because there was no issue raised or decided as to the inadequacy of the selling price of the shares, or that there was a deficiency in the notice of sale. The point is that every issue or question which related to the validity of the order under attack could have been raised. It is true that the appeal in that case was by the debtor rather than by Dyner but, at the same time, as the owner of all of the stock of the debtor he was its alter ego. More than that, he was a party to the proceeding below, filed objections to the report confirming the sale and, therefore, had a right to appeal individually from the order or to join the debtor in its appeal.

The court, in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, referring to the general rule of *res adjudicata*, stated: "The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195. The judgment puts an end to the cause of action, which cannot

again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." This rule, in the same or similar phraseology, has often been applied under a variety of circumstances. See Tait v. Western Maryland Railway Co., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405 (and cases therein cited); Jackson v. Irving Trust Co., 311 U.S. 494, 503, 61 S.Ct. 326, 85 L.Ed. 297 (and cases therein cited), and Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 282, 66 S.Ct. 1105, 90 L.Ed. 1230.

■ Assuming, however, that the principle lastly discussed is without application, petitioner is in no better position. This is so for the reason that the finding of the District Court, made on May 27, 1955, as to the fair market value of the shares, that due notice of the sale had been given to all interested parties and that it was in the best interest of the estate that the bid of Intelectron be accepted, are now as binding on this court as if such issues had been raised on the previous appeal. (The record on the previous appeal has by order of court been made a part of the record on this appeal.) Under Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., those findings must be accepted unless clearly erroneous. As previously remarked, however, they are supported not merely by substantial evidence, but overwhelmingly.

This contention that the price bid for the shares by Intelectron was grossly inadequate apparently is an afterthought. No such question was raised until after the filing of our mandate in the District Court (almost one year after the sale), and, prior to that time, there was no shocking of conscience either of the court or anyone else. Since that time, nobody's conscience has been shocked except that of petitioner. In fact, the record reveals a high degree of fairness accorded by the court to petitioner. On numerous occasions the time limit fixed by the court for the proposing of plans

was extended at the request of petitioner, and it was only on the last day of the last extension that the debtor appealed from the order of sale. After affirmance by this court petitioner sought a vacation of a confirmed order of sale and leave to file another plan, as uncertain and illusory, no doubt, as those which he had previously proposed. To have granted his request would have turned back the clock on this bankruptcy estate to the point where it commenced.

▖ It is our view that Intelectron as a result of the judicial sale under attack acquired a vested right in the shares of Bethlehem stock which the court under the circumstances was without power to destroy. If we assume, however, that it had such power, it is further our view that granting the relief sought by Dyner would have constituted a clear abuse of discretion.

The order appealed from is

Affirmed.

SCHNACKENBERG, Circuit Judge. (concurring).

By his petition, Dyner seeks to set aside the confirmed sale to Intelectron on the ground that it was for a grossly inadequate price. But that ground was not among those urged when Marathon, the debtor, (all of whose stock Dyner owns), objected to the confirmation of the sale. We affirmed an order overruling the stated objections and confirming the sale. In re Marathon Foundry & Mach. Co. (Marathon v. Schwartz), 7 Cir., 228 F.2d 594. A court of bankruptcy may, in a subsequent proceeding, set aside a confirmed judicial sale, but the general rule is that, if the parties in the subsequent proceeding are the same as in the prior proceeding in which the confirmation of the same sale was unsuccessfully opposed and an order entered accordingly, the doctrine of *res judicata* applies in the subsequent proceeding. That is true as to all grounds urged against confirmation in the prior proceeding. It is also true as to all grounds which were not

but could have been there urged, unless the later proceeding is based on a different cause of action. Cromwell v. Sac County, 94 U.S. 351, 353, 24 L.Ed. 195. Both proceedings now in question were attempts to defeat the sale to Intelectron. They involved the same cause of action, asserted first by filing of objections to confirmation and secondly by presenting a petition to set aside the sale. Undoubtedly a bankruptcy court in the exercise of its equitable powers may set aside a judicial sale on *equitable* grounds, such as fraud, accident or mistake. However, none of these grounds is set forth in Dyner's petition. Even if the petition did charge fraud, that charge is not directed at the purchaser. If gross inadequacy be the basis of the petition, it will not state an equitable cause of action for setting aside the sale unless Intelectron is charged with unfairness or the taking of an undue advantage. Graffam v. Burgess, 117 U.S. 180, 192, 6 S.Ct. 686, 29 L.Ed. 839. Therefore, I conclude that Dyner's petition is a second attempt by the same party to litigate the same cause of action and is barred by *res judicata*.

It is not necessary to decide whether a sufficient charge of fraud against Intelectron, if made in the present proceeding, would constitute a cause of action different from that involved in the prior proceeding. Such fraud is not charged, as above pointed out. If fraud were properly charged and if thereby a different cause of action were stated, then the rule is that only points actually raised and passed on in the prior proceeding would be binding in the present proceeding as an estoppel by judgment. Cromwell v. Sac County, supra. It is evident that the referee below based his ruling on the doctrine of *res judicata*. The court stated no grounds for its order. It would have been better if they had permitted the filing of Dyner's petition and had permitted the defense of *res judicata* to be raised by a proper pleading. Instead, Dyner was not permitted to file his petition, and was therefore never in a position to submit evidence as

to the merits of the Thompson-Starrett offer.

For the reasons herein stated, the order from which this appeal was taken is properly affirmed.