## In re DIVERSEY BLDG. CORPORATION.

## DIVERSEY BLDG. CORPORATION v. METROPOLITAN TRUST CO. et al.

### No. 8387.

Circuit Court of Appeals, Seventh Circuit.

Feb. 29, 1944.

Arthur Abraham and Hyman J. Rosenberg, both of Chicago, for appellant.

Isaac E. Ferguson, Morton Lane, Edward Rothbart, and J. M. Rosenfield, all of Chicago, for appellees.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

The debtor filed its motion in the District Court for permission to file its petition to amend and modify the plan of reorganization which had theretofore been approved and confirmed by that court, and was then being effectuated by the debtor and the defendant trustees appointed by the District Court for that purpose. With that petition the debtor tendered its proposed modified or amended plan, asked that it be set for hearing on a day certain, and that notice of that fact be given to all creditors and stockholders, in order that those desiring to do so might object to, or accept, the proposed amended plan, and withdraw their acceptance of the original plan. Both trustees under the trust indenture filed written objections to the motion, and the matters in issue were briefed by all parties. The District Court denied the debtor's motion to file its petition, and from that ruling this appeal is prosecuted.

The motion here in issue was filed by the debtor, on February 25, 1943, in its original bankruptcy proceeding, wherein its original petition for reorganization was filed June 22, 1934. In that proceeding, the debtor, on February 25, 1935, filed its proposed plan of reorganization, which was approved by the bankruptcy court on April 20, 1935. In its decree the court found that the debtor's proposed plan complied with the provisions of the pertinent statutes, and had been accepted by the requisite percentage of the debtor's creditors and stockholders. It authorized the debtor corporation to take all action necessary to consummate it, and set the cause for further hearing with respect to the allowance of fees and expenses, and the entry of a final decree.

At that time the creditors were the holders of 6½% first mortgage bonds issued by the debtor on May 22, 1924, which were guaranteed by Fred Becklenberg. The original amount of those bonds was $1,250,000. However, at the time of the approval of the original plan, it had been reduced by payments and retirement to $987,500, of which $135,700 were in the hands of Johnson H. Pace and Fred Becklenberg, Jr., as trustees, the latter now being president of the debtor company.

The approved plan proposed to exchange the outstanding 6½% bonds for new 15 year first mortgage bonds, guaranteed by Fred Becklenberg, to bear interest at 5% per annum, if earned during the life of the bonds, but with minimum interest at 3% per annum guaranteed. The new issue was to consist of $851,000 series "A" bonds, and $135,000 series "B" bonds. However, nothing was to be paid on the "B" bonds until all interest and principal on the "A" bonds were paid in full.

The District Court, on June 28, 1935, entered what it termed its final decree, ordering the confirmed plan carried out. Pursuant to that decree the debtor executed a trust deed, securing the new bonds, to Metropolitan Trust Company as corporate trustee, and Benjamin V. Halstead, as individual trustee; it executed and delivered a chattel mortgage upon the furnishings and equipment of the hotel, then being operated in the building, to the Metropolitan Trust Company as mortgagee, as additional security for the bonds issued; it furnished resolutions of its board of directors authorizing its officers to execute and deliver all the bonds, the trust deed and chattel mortgage referred to in the plan, and they were so delivered; the debtor and its stockholders delivered to the trustees all the outstanding shares of the debtor's capital stock as security under the terms of the indenture; the bonds of Pace and Becklenberg, Jr., so delivered, were endorsed with the legend that they were subordinated and exchangeable for series "B" bonds; Fred Becklenberg executed and delivered to the mortgage trustees his guaranty of the bond principal and the minimum annual interest of 3%; the trustee under the trust deed of May 22, 1924 released that lien, and the indenture trustees thereupon distributed the bonds according to the plan.

Creditors were enjoined from prosecuting proceedings at law or in equity against the debtor or its assets upon any claim, whether or not filed therein, and all rights and interests of creditors of the debtor were thereby terminated and ended.

The debtor was directed to take all steps necessary to consummate the plan, and, in conjunction with the bondholders committee, to construe and interpret the provisions of the plan, and to make such alterations, modifications, changes and amendments to the documents and instruments thereby approved as might be deemed necessary to properly consummate the plan, provided that no such alteration should be made without the authority of the court, if it should be adverse to the interest of any of the creditors or stockholders of the company.

For the determination of all matters germane to that proceeding, not theretofore or thereby determined, the debtor, or any other party in interest, might apply to that court for further instructions and directions with respect to any of the matters covered in the order of confirmation, or in the order then being entered, or by the plan. The court reserved jurisdiction to hear and determine the subject matter of any application with respect to all other matters which might arise in the execution of the order of confirmation, "or in this order, or in the consummation or carrying out of the plan of reorganization." In this final decree no changes were made in the plan which had been confirmed and ordered consummated by the decree of April 20, 1935.

The new bonds and trust indenture were made effective as of May 1, 1935, and the bonds are to mature in 1950. Since May 1, 1935, the debtor has operated this property under the terms of the trust indenture. All taxes have been paid. The guaranteed 3% interest on the class "A" bonds has all been paid promptly, and a large amount of the additional 2% interest upon the same bonds, which was to have been paid if earned, has been paid, up to and including the year 1942. This was due to the fact that the debtor was enabled to and did pay on that interest account 6% during the year 1942, and a fraction more than 6% during each of the years 1940 and 1941. However, the earnings have not been sufficient to retire any part of the bonded indebtedness, and no funds are available for allocation to the sinking fund for that purpose. Herein is the basis of appellant's contention.

Notwithstanding the fact that since 1938 the gross income of the debtor company has averaged approximately $8000 per month, and that in each year since 1939 there has been available more than $50,-000 for interest on the bonds, appellant has presented its motion and petition, under the original proceeding, for an amended plan of reorganization. This it does on the theory that no part of the principal can or will be paid before or on the date when due in 1950. It bases its right to an amended plan of reorganization on that part of subsection f of section 77B, Bankr. Act, 11 U.S.C.A. § 207, sub. f, which reads as follows:

"Before or after a plan is confirmed, changes and modifications may be proposed therein by any party in interest and may be made with the approval of the judge after hearing upon notice to creditors and stockholders, subject to the right of any creditor or stockholder who shall previously have accepted the plan to withdraw his acceptance, within a period to be fixed by the judge and after such notice as the judge may direct, if, in the opinion of the judge, the change or modification will be materially adverse to the interest of such creditor or stockholder, and if any creditor or stockholder having such right of withdrawal shall not withdraw within such period, he shall be deemed to have accepted the plan as changed or modified: Provided, however, That the plan as changed or modified shall comply with the provisions of subdivision (b) of this section and shall have been or shall thereafter be accepted as required by the provisions of subdivision (e), clause (1), of this section, including acceptances by reason of failure to withdraw as hereinbefore provided, and the provisions of this subdivision (f), and of subdivision (e), clause (2), of this section, shall have been complied with in respect thereof."

The proposed plan which accompanies the debtor's motion contemplates a change in the capitalization of the debtor to provide for an authorized capital stock of 8,518 shares of preferred stock of the par value of $50 per share, and 16,000 shares of no par common stock. It further provides that the present Class A and Class B bonds, secured by the trust indenture, shall be cancelled, and in exchange therefor the holders of each Class A bond of the par value of $100 shall receive $50 in cash, one share of preferred stock, and one-half share of common stock. The holders of the present Class B bonds shall receive nothing for their cancellation. The remaining shares of no par common stock shall be exchanged with the present beneficial owners of the stock of the debtor corporation on a pro rata basis.

The proposed plan provides that a new first mortgage loan shall be secured of $425,900, out of which shall be paid the 50% of the present Class A bonds in cash, and the costs of reorganization. The rate of interest on this loan is not disclosed. However, the plan states that the amount of the mortgage is substantially the entire amount that could be realized from the sale of the property. The cash payment of 50% would relieve Fred Becklenberg from that amount of his present guaranty, and the plan further relieves him from his guaranty of 3% dividends on the stock. He only guarantees the redemption of the proposed preferred stock fifteen years from the date of its issuance.

We cannot accept appellant's interpretation of subsection f of this Act. We are convinced that Congress did not intend that a debtor corporation should be permitted to ask for a radical change of plan of reorganization after it had been confirmed by the court and was being executed under the court's supervision. It is quite true that the quoted language from subsection f states that changes and modifications may be proposed before or after a plan is confirmed, however, this subsection must be construed with other pertinent subsections, such as g and h, in determining the intention of Congress. Here the plan as confirmed had been in operation for almost eight years, without complaint so far as this record shows, and it was originally proposed by the debtor itself. Under these circumstances we think the court was without jurisdiction to entertain appellant's motion. We interpret subsection f to mean that changes and modifications after the plan is confirmed refer to such changes as will better aid in carrying out the plan which has been finally confirmed, and not such changes or modifications as will materially alter the property rights established by the decree of confirmation, and in no event shall any change be made without the consent of the court.

In support of its contention, appellant relies on In re H. W. Clark Co., 7 Cir., 79 F.2d 681; Downtown Investment Association v. Boston Metropolitan Buildings, 1 Cir., 81 F.2d 314; and In re Celotex Com-

pany, D.C., 12 F.Supp. 1. These cases relate to amendments of the plan of reorganization before its consummation, and for that reason we think they are not in point. We find no authority supporting appellant's interpretation of subsection f. Carried to its ultimate conclusion we think it would end in confusion worse confounded both for the creditor and the debtor.

Appellant urges that the decree of June 28, 1935 was not a final decree in that the cause was not finally disposed of. That decree, however, was interlocutory in its character, and definitely fixed all the rights of all the parties, and it was a final and appealable decree. True, the terms of the trust indenture were not fully performed, and, indeed, full performance could not be required until 1950. However, the property rights were fixed, there was no failure of performance on the part of the debtor and its guarantor, and there was no indication that there would be such failure until the principal of the debt was due. Under these circumstances we think that neither the debtor nor the court could alter those property rights as fixed by the interlocutory decree.

The District Court did not indicate the basis for its ruling. However, we think it was without jurisdiction to grant the relief prayed for. If otherwise, certainly in such matters the District Court necessarily had discretionary powers under the statute. If its ruling was based on the court's discretionary powers, we think that discretion was not abused. If, on the other hand, it considered the petition as one for a rehearing on the confirmation of the plan, then the order was not appealable.

The order is affirmed.