## PRUDENCE–BONDS CORP. et al. v. CITY BANK FARMERS TRUST CO.

### No. 143, Docket 21838.

United States Court of Appeals
Second Circuit.

Argued Jan. 5, 1951.

Decided Feb. 1, 1951.

Delafield, Marsh & Hope, New York City, Wilmurt B. Linker, James Harper, Jr., New York City, of counsel, for appellant City Bank Farmers Trust Co.

Hoffman, Bondi, Buchwald & Hoffman, New York City, Edward Lazansky, Samuel Hoffman, Bernard Buchwald, New York

City, of counsel, for bondholders Ernest G. Laubenheimer and David I. Arbuse.

Charles M. McCarty, New York City, for Prudence-Bonds Corp. (New corporation).

Geo. C. Wildermuth, Brooklyn, N. Y., for the trustee of the debtor.

James F. Dealy, New York City, for Reconstruction Finance Corp.

Koenig & Bachner, New York City, for bondholders.

Samuel Silbiger, Brooklyn, N. Y., for George E. Eddy.

Before L. HAND, Chief Judge, and SWAN and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Chief Judge.

This is an appeal from the order of a court of bankruptcy, extending for two years the due date of eighteen series of bonds, "reorganized" under § 77B of the Bankruptcy Act in the "plan of reorganization" of the Prudence-Bonds Corporation, confirmed on January 18, 1938. The debtor had issued the bonds in separate series, each series being secured by mortgages on real estate, which had been assigned to and were held by eleven separate corporate trustees for the bondholders. Under the "plan of reorganization" all these bonds were modified in obligation, the debtor was discharged of liability upon them and a newly organized corporation—the "New Corporation"—was to assume their payment as modified. What remained of the securities of each series was to continue to secure the same bonds, although a single new trustee for all the series was substituted for the former eleven trustees. After the order of confirmation was entered the securities have been continually in process of liquidation, and the proceeds have been applied in reduction of the bonds. The "plan" provided that the due date of all the bonds should be extended to May 1, 1945, and, if they had not been paid in full by that time, that it might be further extended to May 1, 1950. Both extensions were made, but the liquidation was delayed beyond the period anticipated, particularly because of the accountings of the

original trustees of some of the series. Some time after confirmation the trustees of the reorganization discovered that some of the trustees of the series had permitted the security of their series to be depleted in violation of the trust deeds; their accounts were surcharged with resulting losses, and large amounts have been recovered from them after much litigation, some of which came to this court.[1] When it became apparent that for this and other reasons the liquidation and distribution would not be completed before May 1, 1950, the "New Corporation" in April of that year applied to the court for an order extending still further the due date of the bonds to May 1, 1952. The substituted trustee of all the series opposed this motion on the ground that the court had lost jurisdiction over the proceeding, and that the bondholders must be left free to enforce their bonds at law. The judge caused notices of the motion to be served upon all the bondholders, and upon the return day over 97 per cent of the two-thirds, who answered at all, assented to the proposed extension; but the substituted trustee still pressed its objection, not because it thought the extension undesirable on the merits; but because it feared that the extension might be beyond the court's jurisdiction, and that an order would not protect it. The court held that its jurisdiction had not ended and entered an order extending the due date as prayed. It is from this order that the substituted trustee has appealed; and after the appeal was taken several bondholders have filed a separate brief also seeking reversal.

Although the petition under § 77B was approved more than three months before the Chandler Act took effect—September 22, 1938—Chapter X, 11 U.S.C.A. § 501 et seq., applies to the proceeding "to the extent that the judge" deemed that chapter's "application practicable," § 276, sub. c (2). It is true that we are not referred to any order of the judge, making Chapter X generally applicable, but we shall nevertheless assume that, in respect of his power to grant the order, he did deem the chapter applica-

---

1. Central Hanover Bank & Trust Co. v. President and Directors of Manhattan Co., 105 F.2d 130; Manufacturers Trust Co. v. Kelby, 125 F.2d 650; President and Directors of Manhattan Company v. Kelby, 147 F.2d 465; Eddy v. Kelby, 163 F.2d 56.

ble, so far as that chapter justified anything which § 77B did not. This we may do upon the canon: *ut res magis valeat quam pereat;* for, if Chapter X extended the judge's powers beyond those given under § 77B, he must be presumed to have invoked it, as he might. Section 221 of Chapter X provides for an order of "confirmation" of the "plan," and §§ 224–227 provides for its "consummation" by the debtor or by any new corporation organized in its place, and "consummation" includes "distribution * * * in accordance with the provisions of the plan," § 224(4). To this end the judge may take any action which he "may deem necessary for the consummation of the plan", § 227; and "upon consummation" he is to enter a "final order," among other things "closing the estate", § 228, sub. 4. Section 222 expressly provides for "alterations" or "modifications" before or after confirmation, although when these affect the interests of creditors "adversely," they must be made *upon notice to all.* The appeal turns upon what powers the court has between "confirmation" and "final order." Obviously, the reorganization of a corporation presupposes that the "revived debtor" (the old "debtor" cleared of its original liabilities, or a newly organized corporation), shall continue the original enterprise; and it is a corollary that for the future it must take its chances without the continuing aid of the bankruptcy court. Hence, as all agree, there must come a time when that court will not, and indeed may not, give it further support; indeed, if it turns out to be a perpetual invalid, the reorganization has failed. On the other hand it is right, and it is necessary for the court to superintend and enforce the execution of the "plan," and it must have power to take all proper measures to that end; the "final order" alone puts an end to that power. At the outset we should distinguish between the jurisdiction over issues arising between parties to the reorganization itself and a subsequent controversy, though before "final order," between the "revived debtor" and a third person. Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 132 F. 2d 299; Reese v. Beacon Hotel Corporation, 2 Cir., 149 F.2d 610. As to all such its recourse must be to those courts to which it would be confined under state law.

However, there has undoubtedly been considerable difference of opinion about the court's power to accommodate the original "plan" to changes after confirmation in the financial situation of the "revived debtor." On this question we declared ourselves four times between 1942 and 1946. In In re Ambassador Hotel Corporation, 2 Cir., 124 F.2d 435, the State of New York had passed the "Streit Law" affecting voting trusts after a "plan" had been confirmed which set up a voting trust, whose duration, though lawful at the time, it was alleged that that act had cut down. We held that the state courts alone had jurisdiction to decide whether it had done so; and we did not mention the circumstance that the order of confirmation contained no reservation of power, so far as appears. In Bakers Share Corporation v. London Terrace, Inc., 2 Cir., 130 F.2d 157, the possibility that the "Streit Law" would be enacted had been anticipated when the "plan" was "approved," and it provided that, if such a law was in force when the voting trust expired, the trust might be extended by a majority vote of the certificate holders; but that, if the old law remained unchanged, the trust would be automatically extended unless the certificate holders voted that it should not be. We held that this reservation, which was necessarily adopted in order of confirmation, gave the bankruptcy court jurisdiction to consider whether the amendment of the state law applied to such a trust; and, since we thought that it did, we refused to approve the extension, a majority of the holders not having assented. In Re Flatbush Avenue-Nevins Street Corporation, 2 Cir., 133 F.2d 760, the confirmation had not reserved power to deal with the particular question which came up later, although there was a general reservation such as there was in the confirmation at bar, and we made this the basis of our ruling that the court did not retain jurisdiction, though we did give admonitory advice about the issue. Towers Hotel Corporation v. La Fayette National Bank, 2 Cir., 148 F.2d 145, made the court's power depend upon a specific reservation; and so, apparently, did the Sixth Circuit

in In Re Elless Co., 174 F.2d 925. It is true that there was always a limit even when jurisdiction was reserved; the court may never under the guise of "alteration" or "modification" substitute an entirely new "plan" in place of the original;[2] although what is the line between a substitute and an "alteration" or a "modification" is necessarily left at large. The upshot of it all was that, although with that exception anything might be specifically reserved, the court retained no power of "alteration" or "modification" which the order of confirmation did not in fact reserve.

■ This interpretation was influenced to a large degree by our desire to check the prevalent practice of trying to keep the "revived debtor" in leading strings, of exempting it from the hazards which attend its competitors, and of allowing it a summary recourse to the bankruptcy court in all its troubles. That, as we have already said, is plainly a perversion of reorganization. Nevertheless, although we cannot deny that it was the law of this circuit when we decided Knight v. Wertheim & Co., 158 F.2d 838, that decision cannot be reconciled with it. The order of confirmation had been entered two months before the petition for an "alteration" in the "plan" was filed; and neither the order nor the "plan" had contained any specific reservation of jurisdiction over the issue at bar. Notwithstanding the absence of any such reservation, we allowed the change after satisfying ourselves that it did not substitute a new "plan"; and it seems to us that we were right in so doing. As *res integra*, we think that, if Congress had meant to impose upon the power to alter or modify, the condition that there must be a specific reservation in the order of confirmation, it would not have written the section as it did. Our reason is that the section makes no distinction between "alterations" and "modifications" made before and after confirmation, so that we are safe in starting with the premise that, if a specific reservation of power is necessary to extend jurisdiction after confirmation, a similar specific reservation must be necessary in the "plan" itself; for it would certainly be unwarranted to import the condition in one situation and not in the other when the same words cover both. Yet plainly it is not necessary for the "plan" itself to contain a reservation giving permission to the court to alter or modify it upon confirmation, for the purpose of § 222 is to accommodate the "plan" to unforeseen changes after it has been "approved." This appears from the condition requiring notice to and consent by any group "adversely" affected, which would be altogether unnecessary if all changes were conditioned upon a specific reservation already in the "plan." We therefore conclude that our earlier decisions, in so far as they depended upon the presence of an express reservation in either the "plan" or the order of confirmation, were erroneous.

■ The question is one of discretion, though of a discretion which should be sparingly exercised, and which should not be exercised, as in North American Car Corporation v. Peerless Weighing & Vending Machine Corporation, 2 Cir., 143 F.2d 938, unless the circumstances peremptorily demand it. That they did in Knight v. Wertheim & Co., supra,[3] for otherwise the bondholders would have gone off with a large equity, owing to the wholly unexpected appreciation of the property; a result which the whole history of foreclosure forbad. We cannot deny that the view which we now take may lead to abuse; it is often exceedingly difficult for a bankruptcy court to resist the importunities, usually unopposed, of those who wish to keep the "revived debtor" indefinitely beneath its aegis; and our review of a discretion, which we may think to have been unwisely exercised, is not a very effective remedy. We can do no more than declare, for whatever weight it may have, that we deem the long delay which so often occurs between the order of "confirmation" and the "final order" a major abuse, and that a judge who superintends such a proceeding should feel himself charged with an affirmative duty to insist upon its early conclusion.

Order affirmed.

2. Diversey Building Corporation v. Metropolitan Trust Company, 7 Cir., 141 F.2d 65; Country Life Apartments, Inc. v. Buckley, 2 Cir., 145 F.2d 935.

3. 158 F.2d 838.