**In the Matters of INLAND GAS CORPORATION, Kentucky Fuel Gas Corporation, American Fuel & Power Company, Debtors.**

**Nos. 13911, 13955.**

United States Court of Appeals
Sixth Circuit.

Jan. 27, 1960.

510

Murray Seasongood and Robert P. Goldman, Cincinnati, Ohio, George Zolotar, New York City, Leo T. Wolford, Louisville, Ky., Charles Landrum, Jr., Lexington, Ky., for appellants Kern and others.

Thomas G. Meeker, Arthur Blasberg, Jr., David Ferber, Richard B. Pearl, Washington, D. C., Charles J. Odenweller, Jr., Cleveland, Ohio, for Securities and Exchange Commission.

Selden S. McNeer, Robert K. Emerson, Campbell, McNeer, Woods & Bafley, Huntington, W. Va., for Ben Williamson, Jr., trustee.

Edward S. Pinney, John F. Hunt, Jr., David Melamed, Cravath, Swaine & Moore, New York City, for Columbia Gas System, Inc.

Robert S. Spilman, Jr., Charleston, W. Va., for Allen Committee.

George W. Jaques of Milbank, Tweed, Hope & Hadley, New York City, for Vanston Committee.

Walter H. Brown, Jr., Kenneth J. Bialkin, New York City, and John L. Smith, Catlettsburg, Ky., for Committee for Holders of Kentucky Fuel Gas Corp. 6½ Debentures.

Before MARTIN, MILLER and CECIL, Circuit Judges.

MARTIN, Circuit Judge.

We would need go to fiction rather than to the case books to find an appropriate parallel to this prolonged litigation. See Jarndyce v. Jarndyce, reported in "Bleak House" by Charles Dickens. The controversy presented by the present appeals evolves from an equity receivership instituted in late 1930, followed by proceedings under section 77B of the Bankruptcy Act and finally by corporate reorganization proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The two separate appeals which bring the case to us again at this late date are from an order entered by the United States District Court confirming a plan of reorganization.

For an understanding of the history and background of the case in all phases, we refer to our previous decisions, as follows: In re Inland Gas Corporation [Columbia Gas v. Lockhart] 6 Cir., 1937, 91 F.2d 113; Hamilton Gas Co. v. Inland Gas Corporation (Piney Oil & Gas v. Inland Gas Corp.), 6 Cir., 1939, 102 F.2d 131; In re American Fuel & Power Co., 6 Cir., 1941, 122 F.2d 223; Columbia Gas & Electric Corporation v. United States, 6 Cir., 1945, 151 F.2d 461; Columbia Gas & Electric Corporation v. United States, 6 Cir., 1946, 153 F.2d 101; In re Inland Gas Corporation, 6 Cir.,

1951, 187 F.2d 813; In re Inland Gas Corporation, 6 Cir., 1953, 208 F.2d 13; In re Inland Gas Corporation, 6 Cir., 1954, 211 F.2d 381; In re Inland Gas Corporation, 6 Cir., 1954, 217 F.2d 207; In re Inland Gas Corporation, 6 Cir., 1957, 241 F.2d 374; In re Inland Gas Corporation, 6 Cir., 1959, 262 F.2d 510. The first two above-listed opinions have no relevancy now.

Our opinion reported at 1945, 151 F.2d 461, discloses the historical background; and our last two opinions, entitled "In re Inland Gas Corporation", reported respectively in 1957, 241 F.2d 374 and in 1959, 262 F.2d 510 relate to, and we think control, the issues directly presented by the present appeals.

At the conclusion of our latest opinion (decided January 15, 1959), reported at 262 F.2d 510, certiorari denied April 27, 1959, Kern v. Columbia Gas System, 359 U.S. 979, 79 S.Ct. 979, 3 L.Ed.2d 928, we stated that United States District Judge Ford had appropriately applied our adjudication set out in 241 F.2d 374, with respect to post-bankruptcy interest and to all other issues before him. The appeals were accordingly dismissed and the judgment of the district court, confirming the plan of reorganization, was affirmed. In that portion of our opinion written by Judge Miller, in which the writer concurred, we held directly that post-bankruptcy interest should not be allowed the public holders of bonds and debentures of the Kentucky Gas and Fuel Corporation.

In proceedings in the United States District Court following remand, Paul Kern filed what he called "Alterations and Modifications" of the Plan of Reorganization which had been confirmed. Kern was not an original investor in the Kentucky bonds and debentures but began buying them in 1941 and continued to increase his holdings until he owned thirty-four percent of the outstanding issue of bonds and debentures. Throughout these lengthy proceedings, this speculator has filed six appeals from the district court's orders and judgments. At the conclusion of the hearing, the district judge announced his denial and rejection of the proposed petition for alterations and modifications and granted the petition of the Inland Gas Corporation for an order consummating the plan. The present appeals are from that order, which was entered on June 1, 1959.

We are of opinion that the United States District Court correctly and faithfully followed the mandate of this court. A comparison of the proposed alterations and modifications of the Plan of Reorganization with the Plan, which we have heretofore affirmed, clearly reveals that the alterations and modifications under consideration are not merely such, but in totality constitute an altogether new and different proposed plan of reorganization.

At the outset, the so-termed "Alterations and Modifications" entirely eliminate Article I, which discloses the directions of the district court to the Trustee as to the method of drawing the plan and states the principles upon which the reorganization is grounded. Indeed, nothing appears to be left of the confirmed Plan, except the partial description of the reorganization and history of the debtor. Many changes demonstrate that an entirely new plan is presented under the guise of "Alterations and Modifications." Notation should be made of the following important changes:

(1) The alteration suggested by Kern would forbid the Trustee of Inland Gas Corporation from paying claims and reorganization expenses and fees, and would impel the transfer of all physical properties and cash to the reorganized corporation which would assume the obligation of making such payments;

(2) Article V of the confirmed plan has eliminated therefrom the reorganization value of $10,538,800 upon which the plan is predicated;

(3) The classification of the creditors as set forth in Article VI is so changed that the public creditors of Kentucky, rather than those of Columbia, would

receive all stock of the reorganized corporation;

(4) The capitalization of the reorganized corporation is completely changed from 500,000 authorized shares of common stock and a short-term unsecured bank loan not to exceed $4,000,000 to a wholly different capital structure. The proposed complex capital structure consists of $2,530,000 of Series "A" five-and-one-half percent bonds, due October 1, 1971; $470,000 of Series "B" five-and-one-half percent convertible bonds, due October 1, 1971; a $1,250,000 Series "C" five percent first mortgage note, due October 1, 1962; and new stock of the reorganized corporation to be issued in the amount of $4,765,160 par value.

The three above-listed series of new bonds and the mortgage note would be secured by a first-mortgage on all the debtor's properties and, presumably, would be purchased by the insurance companies and the banks named in the so-called "Alterations". New stock of the par value $3,265,160 would be issued to public holders of Kentucky bonds and debentures. There would be offered for sale on subscription rights to public holders of Kentucky bonds and debentures $694,650 par value of the new stock and $805,350 par value of that stock would presumably be sold to underwriters Dempsey & Company and Byllesby & Company who proposed, subject to specified conditions, to purchase at par all the new common stock which Kentucky creditors receive and desire to sell and all the new stock which Kentucky creditors would be entitled to purchase under the right to subscribe but did not desire to purchase;

(5) The proceeds from the sale of bonds and new stock, together with the cash balances of the Trustee, would be used to pay reorganization fees and other expenses and certain priority claims; to pay the American Fuel & Power Company notes with post-bankruptcy interest; to pay the secured claims of Columbia against Inland Gas Corporation, with post-bankruptcy interest; and to pay the unsecured claims of Columbia against Inland Gas Corporation without post-bankruptcy interest;

(6) Finally, the so-called "Alterations and Modifications" provide further that two insurance companies and a banking institution would supply the debt financing for which Kidder, Peabody and Company would be paid a fee of $45,000 for services. All the financing proposals, however, were made subject to contingencies. For example, the Home Life Insurance Company proposal letter states that the proposed financing by Kidder, Peabody and Company is in principle satisfactory to it, but that any binding commitment on its part would be subject to execution of a purchase agreement and indenture satisfactory to it and to its counsel. Moreover, the commitment of Dempsey & Company and Byllesby & Company to purchase at par all stock of the reorganized corporation which the public holders of Kentucky securities desired to sell or for which they refused to subscribe is hedged with a time limitation of August 31, 1959, which has already expired.

The statute with which the appellants contend the district court failed to comply is section 222 of the Bankruptcy Act [11 U.S.C.A. § 622], 52 Stat. 898: "A plan may be altered or modified, *with the approval of the judge,* after its submission for acceptance and before or after its confirmation if, *in the opinion of the judge,* the alteration or modification does not materially and adversely affect the interests of creditors or stockholders. If the judge finds that the proposed alteration or modification, *filed with his approval,* does materially and adversely affect the interests of creditors or stockholders, he shall fix a hearing for the consideration, and a subsequent time for the acceptance or rejection, of such alteration or modification. The requirements in regard to notice of hearing, to submission to the Securities and Exchange Commission, to acceptance, to filing and hearing of objections to confirmation and to the confirmation, as prescribed in Article [subchapter] VII of this chapter in regard to the plan

proposed to be altered or modified, shall be complied with." [Italics added.]

■ Judge Ford stated that, had he sustained the position assumed by appellants and permitted the filing of their alterations or modifications, we would be "starting fresh, turning around and going back on another theory." We think the district judge did not abuse the discretion expressly granted him by the statute; but, on the contrary, we consider that he used sound common-sense, practical judgment in declining to permit an altogether new plan to be submitted, under the guise of alterations and modifications, in lieu of a sound plan already confirmed by him and approved by this appellate court, with certiorari denied by the Supreme Court of the United States. In In re Diversey Bldg. Corp. (Diversey Building Corporation v. Metropolitan Trust Co.), 141 F.2d 65, the United States Court of Appeals for the Seventh Circuit affirmed the district court, stating its belief to be that the Congress did not intend that a debtor corporation should be permitted to ask for a radical change of a plan of reorganization after the plan had been confirmed and was being executed under the supervision of the court. The subsection of the statute providing that changes and modifications may be proposed before or after the consummation of a plan of reorganization must be construed, the court asserted, with other pertinent subsections in order to understand the congressional intent. The subsection was interpreted to mean that changes and modifications *after the plan is confirmed* refer to such changes as will better aid in carrying out the plan which has been finally confirmed, and does not mean such changes or modifications as will materially alter the property rights established by the decree of confirmation. In no event, the court added, should any change be made without the consent of the court. The fact that the Diversey case was decided under section 77B of the Bankruptcy Act does not affect applicability of its principles to the situation confronting us here.

Country Life Apartments v. Buckley, 2 Cir., 145 F.2d 935, 937, was a case of reorganization under Chapter X. There, the district court found that, at a confirmation hearing, the proposed amendments constituted a new plan and, for that reason, the court refused to permit such amendments to be filed. This judgment was affirmed on appeal. Judge Clark said: "Appellants' proposals filed by way of objections, however, differed so greatly from the trustee's plan that they could not possibly be treated as a mere modification. * * * Upon ascertaining this fact, the District Court was not required to listen to further arguments on the merits of the proposals, and hence committed no error in denying appellants further opportunity to be heard."

Knight v. Wertheim, 2 Cir., 158 F.2d 838, is regarded by appellants as strong authority in their behalf. We do not agree with their argument for, in that case, Judge Learned Hand said that the proposed changes were not so radical as to fall within the ambit of the court's previous decision in the Country Life Apartments v. Buckley case. Comparison of the facts of the Knight case with those in this litigation will show the cases to be plainly differentiable.

Moreover, in Prudence Bonds Corporation v. City Bank Farmers Trust Co., 2 Cir., 186 F.2d 525, 528, Judge Hand impressively said: " * * * the court may never under the guise of 'alteration' or 'modification' substitute an entirely new 'plan' in place of the original; although what is a line between a substitute and an 'alteration' or a 'modification' is necessarily left at large. * * * The question is one of discretion, though of a discretion which should be sparingly exercised, * * * unless the circumstances peremptorily demand it. * * * We cannot deny that the view which we now take may lead to abuse; it is often exceedingly difficult for a bankruptcy court to resist the importunities, usually unopposed, of those who wish to keep the 'revived debtor' indefinitely beneath its aegis; and our review of a discretion,

which we may think to have been unwisely exercised, is not a very effective remedy. We can do no more than declare, for whatever weight it may have, that we deem the long delay which so often occurs between the order of 'confirmation' and the 'final order' a major abuse, and that a judge who superintends such a proceeding should feel himself charged with an affirmative duty to insist upon its early conclusion."

The contrast of the simple alteration approved in Knight v. Wertheim, supra, with the alterations and modifications proposed here is most striking. It would seem that any careful analysis of the plan which has been confirmed with the result reached should the alterations and modifications of Kern be adopted clearly demonstrates that his offering constitutes actually a completely new and altogether different plan.

The confirmed plan embraces a statement of principles derived from directives of the district court and the decisions of that court denying post-bankruptcy interest to the public creditors of Kentucky Fuel Gas Corporation, while the proposed alterations eliminate those principles and award post-bankruptcy interest to the public creditors of that corporation. The plan is based upon a judicially determined valuation, while the alteration is not predicated upon any definitive valuation of Inland.

The plan calls for a simple capitalization of common stock and an unsecured bank loan: the alteration provides for a complicated capitalization of common stock and the issuance of three series of bonds and a mortgage note, all secured by a first mortgage on all the properties of the reorganized corporation. Under the confirmed plan, the capitalization of the reorganized corporation is assured by an unequivocal offer from a lender, while the finances proposed by the alterations and modifications is subject to several contingencies; and the underwriting offer to purchase stock of the reorganized corporation has already expired by prescribed time limitation. The plan provides for payment in cash of the principal amount of the claims of Kentucky creditors and the issuance of stock to Columbia: the alteration would require the payment of certain claims of Columbia in cash and the issuance to public creditors of Kentucky of stock for their claims. The plan calls for payment of claims and reorganization fees and expenses by the Trustee for Inland Gas Corporation, while the alteration proposes that these be paid by the reorganized corporation.

■ District Judge Ford aptly stated that section 222 authorizes modification, but does not authorize "stopping in the middle of a stream and starting a new plan with all of its problems afresh." We think that he wisely said, also, that the two plans "are not kin in any respect in their major problems", being incongruous rather than congruous.

The appellees are correct in their assertion that the proposed "alterations and modifications" constitute an attempt to relitigate matters previously decided by this court and that district judge did not abuse his discretion in denying them consideration.

In concluding what we hope will be our last words concerning this protracted litigation, we cannot refrain from commending the able, experienced and conscientious district judge, Honorable H. Church Ford, for his patient consideration throughout these many years of the trying and often complicated issues which have been presented to him for determination. We think that he has displayed wisdom in bringing this reorganization case, at "long last", to a successful conclusion, and deserves to rest upon his hard-earned laurels.

The judgment of the district court from which the appeals have been taken is affirmed.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

I fully realize the prolonged period of time during which this reorganization has been in litigation and the sincere desire of those interested in it that it be

brought to a conclusion. But, as the numerous appeals to this Court, referred to in the majority opinion, will show, the operation of the debtor corporation by the Trustee has been most successful over such period of years, with the most unusual result that successive delays have been necessary in order that proposed plans of reorganization could be amended or a new plan submitted so as to properly reflect for the benefit of creditors the materially improving financial and economic condition of the debtor under the management of the Trustee. Our previous treatment of this proceeding clearly shows that we have consistently recognized that the equitable treatment of creditors under materially improved financial conditions fully justified additional delay in bringing the proceeding to a conclusion. It is against this background that we must consider the present appeals. I see no reason why we should now reject that principle if materially changed conditions again warrant a further delay.

The majority opinion gives little, if any, consideration to the fact that the real reason for considering another amendment at the present time is that the proposed amended Plan makes available for certain creditors approximately $3,500,000 more in cash for the payment of their claims than is available under the present Plan. The proper and equitable distribution of this additional money is not provided for by the present Plan. Courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity. Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230. I do not believe that, based on reasons largely technical and on the fact that this reorganization has lasted for an unusually long time, we are justified in closing our eyes to this available increase in asset value of the debtor corporation, and in failing to allocate it among the creditors in some orderly and equitable manner.

The present situation is the result of the following developments. The Plan which has been approved and confirmed, but not consummated, was proposed in February, 1958, on the basis of the financial conditions prevailing as of December 31, 1957. Subsequent to confirmation by this Court on January 15, 1959 (262 F.2d 510) and denial of certiorari by the Supreme Court on April 27, 1959, Kern v. Columbia Gas System, 359 U.S. 979, 79 S.Ct. 979, 3 L.Ed.2d 928, responsible bankers and underwriters interested in reorganizing the debtor made commitments for debt financings and stock underwritings aggregating more than $9,-000,000, the effect of which was to produce for reorganization purposes approximately $3,500,000 more in cash than is provided by the present Plan. These commitments recognized and gave effect to a materially improved financial condition of the debtor corporation. It is true that this original commitment was subject to a time limitation of August 31, 1959. But, by a written letter of August 28, 1959, the date of October 31, 1959, was substituted for August 31, 1959, together with the statement that it was realized that further extensions might be necessary and it was the present intention, assuming no substantial change in general market conditions, to make any necessary extensions, although there was no commitment to do so. The proposed changes in the Plan give effect to this increased value of the assets of the debtor corporation.

For our present purposes it is sufficient to briefly summarize the difference between the treatment of creditors under the present Plan and the proposed treatment under the amended Plan in view of the increased asset value of the debtor corporation. Both the present Plan and the proposed amended Plan deal mainly with the rights and priorities of three classes of creditors, (1) American Fuel public creditors, (2) Kentucky Fuel public creditors, and (3) Columbia Gas. Both Plans provide for the payment in full in cash of the American public creditors in the approximate amount of $4,-900,000 and, by agreement of the parties, these creditors have been paid. The issue involved is accordingly the treatment to be received by, and the allocation of assets between Kentucky public credi-

tors and Columbia Gas. This Court has heretofore adjudicated the priorities between these creditors. The claim of Columbia Gas is subordinated to the claims of all other creditors. Columbia Gas & Electric Corp. v. United States, 6 Cir., 151 F.2d 461, modification denied 6 Cir., 153 F.2d 101, certiorari denied 329 U.S. 737, 67 S.Ct. 48, 91 L.Ed. 636; In re Inland Gas Corporation, 6 Cir., 241 F.2d 374, 381–382. After the payment of the principal of the claims of Kentucky public creditors, but without post-bankruptcy interest, Columbia is entitled to the payment of its claim, without post-bankruptcy interest on the unsecured portion thereof. In re Inland Gas Corporation, supra, 6 Cir., 241 F.2d 374, 382. This is now the law of the case.

The present Plan was based upon this law of the case. After payment of the principal of the claims of Kentucky public creditors in the amount of $2,466,316, the Plan allocates to Columbia all of the new common stock of the reorganized company, valued at $3,021,576, which is less than the principal amount of its claim with interest on the secured portion thereof, totaling $5,780,664. If this valuation had remained constant, the Plan would be fair and equitable.

But, the new financing commitments of 1959 recognized materially increased value of the common stock of the reorganized company, with the probable result that Columbia would receive through the common stock allocated to it more than $5,780,664, which is the total amount of its subordinated claim, while Kentucky public creditors, to which Columbia is subordinated, would only receive the principal of their claims without post-bankruptcy interest. This is directly contrary to the ruling which this Court had previously made and consistently adhered to, that the rights of Columbia are completely and fully subordinated to the claims of all other creditors (151 F.2d 461; 153 F.2d 101; 241 F.2d 374, 381–382). Considering what this Court said in 151 F.2d 461 about the conduct of Columbia in causing the financial collapse of the debtor corporation, I am unable to see how, at the present time,

we can judicially approve the consummation of a plan which, in effect, will pay post-bankruptcy interest in part on the unsecured claim of Columbia and at the same time deny any post-bankruptcy interest on the claims of the Kentucky public creditors unless such result is now required by the applicable statutory provisions.

The proposed alterations prevent this result. The additional cash now available will be used to pay off in full in cash the total claim of Columbia in the amount of $5,780,664. Certainly, Columbia, a subordinated creditor, can have no reasonable valid objection to being paid in full in cash. The Kentucky public creditors will receive in lieu of the cash payment of $2,466,316 provided by the present Plan, new common stock of the par value of $3,265,160, plus the right to subscribe to $694,650 par value of new common stock. The underwriting commitment makes it possible for any Kentucky public creditor who prefers cash to sell the stock issued to him at its par value to the underwriters.

It will thus be seen that the proposed amended Plan will not only pay Columbia in full and at the same time keep it in its subordinated position to Kentucky public creditors, but will result in substantial increased payments to the Kentucky public creditors over what they would receive under the present Plan. This appears to me to be the proper equitable result and one which should be made effective unless we are barred from doing so by the applicable statutory provisions.

There is no legal bar to the alteration of the Plan at the present time, even though it has been confirmed. Sec. 222 of the Bankruptcy Act, Sec. 622, Title 11, U.S.C.A., provides that a plan may be altered or modified, with the approval of the judge, after its confirmation "if, in the opinion of the judge, the alteration or modification does not materially and adversely affect the interests of creditors or stockholders." The majority opinion points out numerous differences between the present Plan and the proposed amended Plan, taking the position

that the proposed changes constitute more than an alteration or modification. But, the statutory test is not the difference in form, but whether the alteration materially and adversely affects the interests of creditors or stockholders.

The essential difference between the two Plans is that the present Plan gives the available cash to Kentucky public creditors and the stock of the new company to Columbia, while the proposed amended Plan pays cash to Columbia instead of stock and gives the stock to Kentucky public creditors instead of cash. Clearly, this does not materially and *adversely* affect the interests of creditors, as such interests are now defined by the law of the case. Its effect is a more equitable distribution of the available assets. Changes in the proposed corporate setup to make this more equitable distribution effective are, of course, necessary, but I do not regard such formal changes as being more than a necessary alteration of the present Plan in order to give the stock to Kentucky public creditors instead of to Columbia. Nor, do the proposed changes, as hereinafter pointed out, depart from the law of the case. On the contrary, in the light of present developments, the present Plan no longer follows the law of the case and changes are necessary to carry out those rulings. Accordingly, I do not regard the proposed changes as anything more than necessary alterations permissible under the statute. Any legal bar to its adoption, if any exists, would come from Sec. 229 of the Bankruptcy Act, Sec. 629, Title 11, U.S.C.A., which provides that when a plan has been substantially consummated, as defined in that section, it may not thereafter be altered or modified so as to adversely affect the participation provided for any class of creditors or stockholders by the plan. The present Plan has not been substantially consummated as therein defined.

The record indicates that the District Judge refused to consider or discuss the merits of the proposed changes, but made the order rejecting them and ordering consummation of the present Plan because he was of the opinion that the changes were predicated solely on an asserted right on the part of the public holders of Kentucky bonds and debentures to post-bankruptcy interest, and that such asserted right had already been adjudicated adversely to said public holders of Kentucky securities on two prior occasions by this Court. No hearing was held on the merits of the proposed changes. I construe the ruling as one of law holding that the proposed changes were not legally entitled to consideration, rather than an exercise of discretion in deciding whether the merits of the proposed changes were such as to receive his approval, which was necessary under the statute.

Considering it as a legal question, I am of the opinion that the ruling was incorrect. As pointed out hereinabove, this Court held in In re Inland Gas Corporation, supra, 241 F.2d 374, 381–382, that Kentucky public creditors were not entitled to post-bankruptcy interest. No doubt, the District Judge had reference to that opinion. The proposed changes pay to Kentucky public creditors a portion (but not all) of post-bankruptcy interest on their claims. The reason for the ruling in 241 F.2d 374, 381–382, was that it was the well established general rule that creditors in bankruptcy are not entitled to post-bankruptcy interest on unsecured claims, and the Kentucky public creditors, under the facts then existing, did not come within any of the three recognized exceptions to the rule. One of the recognized exceptions referred to in the opinion is that if the alleged "bankrupt" proves solvent, creditors receive post-bankruptcy interest before any surplus reverts to the debtor. At the time when the proposed changes were offered, the debtor had become solvent within the meaning of that exception. American Fuel creditors were being paid in full, and under the proposed changes Columbia would be paid in full, leaving Kentucky public creditors as the only class of creditors remaining. They are, accordingly, entitled to post-bankruptcy interest, insofar as remaining funds are

available to do so, before any surplus reverts to the debtor. American Iron & Steel Manufacturing Co. v. Seaboard Air Line Railway, 233 U.S. 261, 266, 34 S.Ct. 502, 58 L.Ed. 949; City of New York v. Saper, 336 U.S. 328, note 7, page 330, 69 S.Ct. 554, 93 L.Ed. 710; Littleton v. Kincaid, 4 Cir., 179 F.2d 848, 852; In re F. P. Newport Corp., Limited, D.C.S.D.Cal., 123 F.Supp. 95, 99, appeal dismissed F. P. Newport Corp. v. Sampsell, 9 Cir., 216 F.2d 344; Marcalus Manufacturing Co. v. United States, Ct.Cl., 169 F.Supp. 821.

It may be that upon a hearing and discussion of the proposed changes, their merit may or may not be as strong as they now appear in the absence of a hearing and a critical analysis thereof. But, the proposed changes appear to me on their face to have sufficient merit to entitle the proponents thereof to a hearing and consideration of them on their merits. I think it was error to reject them without such a hearing.

I would reverse the judgment and remand the case for a hearing and a consideration of the proposed changes on their merits in accordance with the views expressed herein.