309 F.2d 176
 In re INLAND GAS CORPORATION, Kentucky Fuel Gas Corporation, American Fuel & Power Company, Debtors.
GREEN COMMITTEE, INDEPENDENT COMMITTEE FOR AMERICAN FUEL & POWER COMPANY NOTEHOLDERS, Appellant,
v.
Ben WILLIAMSON, Jr., Trustee of Inland Gas Corporation and Kentucky Fuel Gas Corporation, Appellee.
 No. 14682.
 United States Court of Appeals Sixth Circuit.
 October 19, 1962.
 
 Oscar S. Rosner, Rosner & Rosner, New York City (Charles E. Steinberg and Seth Rosner, New York City, of counsel), for appellant.
 Robert K. Emerson, Huntington, W. Va. (Campbell, McNeer, Woods & Bagley, Huntington, W. Va., on the brief), for Ben Williamson, Jr.
 David Ferber, Associate Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (Peter A. Dammann, Gen. Counsel, Paul J. Kemp, Atty., and J. Kirk Windle, Sp. Counsel, Securities & Exchange Commission, Chicago, Ill., on the brief), for S.E.C.
 Before MILLER, Chief Judge, McALLISTER, Circuit Judge, and STARR, Senior District Judge.
 SHACKELFORD MILLER, Jr., Chief Judge.
 
 
 1
 Reorganization proceedings involving the debtors, Inland Gas Corporation, Kentucky Fuel Gas Corporation and American Fuel & Power Company, were started in the United States District Court for the Eastern District of Kentucky in the fall of 1935. A plan which embraced reorganization of the three debtors was finally approved and confirmed by the District Court on June 2, 1958, but did not become effective until the conclusion of litigation by denial of certiorari by the Supreme Court on June 6, 1960. During this period of time numerous appeals have been considered and passed upon by this Court, starting with In re Inland Gas Corporation, 91 F.2d 113, C.A.6th, June 28, 1937, and continuing through In Re Inland Gas Corporation, 275 F.2d 509, C.A.6th, January 27, 1960, certiorari denied, 363 U.S. 813, 80 S.Ct. 1246, 4 L.Ed.2d 1154. As pointed out in the dissenting opinion in the last cited case, 275 F.2d 509, at p. 515, this long period of time consumed in bringing these proceedings to a conclusion was due largely to the fact that the operations by the Trustee for the Inland Gas Corporation were most successful with the most unusual result that proposed plans of reorganization had to be amended or superseded by later plans so as to properly reflect for the benefit of creditors the materially improving financial and economic condition of the debtor under the management of the Trustee. Reference is made in the opinion in 275 F.2d 509, to the numerous other opinions of this Court rendered in these proceedings. A factual statement of the background out of which these proceedings arose is given in Columbia Gas & Electric Corporation v. United States, 151 F.2d 461, C.A.6th, and will not be repeated here. Other recent opinions dealing with the closing phases of the litigation are In Re Inland Gas Corporation, 241 F.2d 374, C.A.6th, and In Re Inland Gas Corporation, 262 F.2d 510, C.A.6th.
 
 
 2
 Following the denial of certiorari on June 6, 1960, reported at 363 U.S. 813, 80 S.Ct. 1246, 4 L.Ed.2d 1154, the District Judge held a three-day hearing starting October 31, 1960, on 42 applications for allowances for services rendered and for reimbursement of expenses. At that time compensation and expenses had been previously paid in the amounts of $1,634,349.41 and $18,845.00, respectively. Additional compensation and reimbursement for expenses were requested in the amounts of $1,422,072.39 and $304,381.27, respectively. The Securities & Exchange Commission, hereinafter referred to as the Commission, recommended that these additional claims be approved and paid in the reduced amounts of $1,085,383.03 and $76,374.16, respectively. The District Judge properly recognized that, although such recommendations were entitled to great weight, the ultimate responsibility for determining fair and reasonable compensation for services rendered rested upon the Court. He approved in the main the recommendations of the Commission, but made a substantial reduction in the total amount finally allowed by order of April 8, 1961. Only one appeal was taken from the order of the District Judge making the final allowances, namely, an appeal by the Independent Noteholders Committee for American Fuel & Power Company 7% Secured Notes, hereinafter referred to as the Green Committee, which appeal is the matter presently before us for consideration.
 
 
 3
 The facts leading up to the present issue are as follows.
 
 
 4
 The Green Committee was formed in 1939 with Louis A. Green as Chairman and Robert Heilbrunn as Secretary. Green resigned in April 1955 and was succeeded by Thomas Keogh. Heilbrunn resigned May 22, 1959, and Keogh served alone after that time. Neither Green nor Heilbrunn requested any compensation for their services.
 
 
 5
 During the years 1942 through 1947 Green and Heilbrunn traded extensively in the securities of the debtors. When the Commission learned of this trading it took the position that their profits should be paid over to the debtors. Under date of July 17, 1947, Green, acting for himself and for Heilbrunn, proposed a compromise settlement, which the trustees reported to the Court, asking the Court to determine whether or not said offer of compromise should be accepted and to advise and direct the trustees with respect to their rights and duties in the premises. Following a hearing, the Court entered an order on August 2, 1947, authorizing and directing the trustees to accept the proposed settlement, which was done. Under the settlement Green paid to the Trustee all of his profits from trading in American Note and one-third of his profits from trading in the securities of the other two debtors. Heilbrunn paid one-third of his profits from trading in bonds of Inland Gas Corporation. He neither purchased nor sold any securities of the other two debtors. These payments by Green and Heilbrunn totaled $14,844.41.
 
 
 6
 In June 1951 the Green Committee filed a petition for reimbursement of expenses to May 31, 1951, in the total amount of $43,888.38, consisting of its own out-of-pocket expenses in the amount of $30,449.47 and its counsel's out-of-pocket expenses in the amount of $13,438.91, for which the Committee had reimbursed counsel. The payment or rejection of this claim was controlled by the provisions of Section 249 of the Bankruptcy Act, Section 649, Title 11, United States Code, which provides in part as follows:
 
 
 7
 "No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred."
 
 
 8
 It appears to be well settled that the operation of this statute is mandatory, rather than discretionary, regardless of good faith or lack of fraud on the part of a claimant or profit or loss in such transactions. Otis & Co. v. Insurance Bldg. Corporation, 110 F.2d 333, C.A.1st; Finn v. Childs Co., 181 F.2d 431, 441, C.A.2nd; In re Midland United Co., 159 F.2d 340, 345, C.A.3rd. In Surface Transit, Inc. v. Saxe, Bacon & O'Shea, 266 F.2d 862, at page 868, C.A.2nd, the Court said:
 
 
 9
 "This result may well work harshly in individual cases as here. But in § 249 of the Bankruptcy Act Congress clearly intended drastic results and thought them necessary to eliminate the serious abuses of insider information which had long been existent in equity reorganizations. * * * In the past excuses of inadvertence or de minimis have not been permitted to undermine the section, and we do not feel we can narrowly constrict it here. * * *"
 
 
 10
 However, in construing an analogous situation, the Supreme Court ruled in Woods v. City Bank Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820, that under certain circumstances, irrespective of the bar, reimbursement for proper costs and expenses incurred in connection with the administration of an estate may be allowed. It said that those expenditures normally should be allowed which have clearly benefited the estate. "Thus where taxes have been paid, needful repairs or additions to the property have been made, or the like, equity does not permit the estate to retain those benefits without paying for them. Such classification of expenses, at times difficult, rests in the sound discretion of the bankruptcy court."
 
 
 11
 The amount of the Committee's own out-of-pocket expenses was arrived at after conferences with counsel for the Commission, as a result of which numerous items, which were proper committee charges but not expenditures of funds inuring to the benefit of the estate within the ruling in the Woods case, were objected to and not included in the claim. The Commission audited the schedule of disbursements and in a memorandum filed with the Court on August 27, 1951, expressed the opinion that the out-of-pocket expenses of counsel was a proper charge against the estate, that real work in representing and protecting the interests of the American Fuel creditors emanated from the Green Committee, that the services were such as might have been rendered by a trustee, that the out-of-pocket expenses incurred in rendering this type of service were in the nature of expenses which the estate would otherwise have had to expend, that they were such as to make the doctrine enunciated in the Woods case directly applicable and permit the payment of such expenses to persons who were disqualified from receiving an allowance, and that "the Green Committee's request for reimbursement of $43,888.38 of out-of-pocket expenses should be granted." However, at the request of the Committee, action by the Court on this application was deferred and was still undisposed of by the Court when the other applications were heard and considered by the Court at the hearing on final allowances in the fall of 1960.
 
 
 12
 At the hearing on final allowances the Green Committee made an additional application for reimbursement of amounts paid by it during the period of May 31, 1951, to the termination of their services in these proceedings in the amount of $11,635.71, consisting of out-of-pocket expenses of the Committee's counsel for travel, hotels, long distance phone calls and printing, for which the Committee had reimbursed its counsel. It also asked reimbursement for an expense of $1,320.63 for services rendered by an accounting firm in 1955 and 1956. The aggregate of the amounts in the 1951 application and this later application was $56,844.72. At the hearing on allowances the Inland trustee in effect approved the claim. Counsel for Columbia Gas System, Inc., who, under the plan of reorganization would be the beneficiary of the money saved by a rejection of claims, filed a brief with the Court in which they stated that the Court should allow the Committee reimbursement for expenses described in its petition.
 
 
 13
 However, the Commission in a carefully prepared memorandum filed with the Court, dealing with the applications for compensation and reimbursement of expenses of the various claimants, departed from its 1951 recommendation, which approved in full the application for $43,888.38, and recommended instead that $13,438.91 of that amount be disallowed. This was the out-of-pocket expenses of the Committee's counsel, paid by the Committee to its counsel. It also recommended that of the $11,635.71 claimed for reimbursement of expenses since May 31, 1961, $7,149.73 be disallowed. It recommended that the expense incurred in the employment of the accounting firm in the amount of $1,320.63 be allowed. The amount which was approved represented expenses incurred after Green resigned from the Committee in 1955 and expenses considered by the Commission to fall within the exception established in the Woods case. This resulted in a recommendation of a total allowance in the amount of $36,256.08 instead of $56,844.72 requested, thus reducing the claim by the amount of $20,588.64. The District Judge approved this recommendation of the Commission by order of April 8, 1961, from which order the Green Committee has taken the present appeal.
 
 
 14
 It will be seen from the foregoing statement of the history of these reorganization proceedings that the present appeal is based upon the fact that the Commission, after taking the position in its Memorandum of August 27, 1951, that the Green Committee should be reimbursed for its payment of the out-of-pocket expenses of its counsel, reversed its position in its Memorandum of March 1961 and recommended to the Court that reimbursement of such expenses be denied, which recommendation the District Judge followed. The contention of the appellant is in brief (1) that the District Judge abused his discretion by accepting the recommendation of the Commission which reaches an inequitable and unjust result, and (2) that the parties interested in these proceedings are estopped from raising any issue as to the right of the appellant to be reimbursed in full.
 
 
 15
 With respect to these contentions it is argued that the District Judge in approving the compromise settlement of August 2, 1947, with the members of the Green Committee knew that the then members of the Committee were continuing to render service and advance funds in the further prosecutions of these proceedings in the interest of the public creditors; that the two members of the Committee at that time offered to resign from the Committee but that Mr. Green was urged by representatives of the Commission to continue on the Committee because of his intimate knowledge of the proceedings and his contribution by way of service as well as bearing expenses; that, except for the compromise settlement and the matters incident thereto, Mr. Green and Mr. Heilbrunn would have refused to continue to participate in the proceedings, render service and advance expenses in pursuit of the rights of public creditors; that they were lulled into a sense of security that they continue to serve and advance monies subsequent to the year 1947; and that it is inequitable and unjust for the Commission more than thirteen years later to reverse its previous approval of the Committee's right to reimbursement for its counsel's expenses, particularly where it was true from the inception that neither of them expected to apply for any compensation for their services.
 
 
 16
 With respect to the argument of estoppel appellant relies upon the general principles of equitable estoppel as explained in First Federal Trust Co. v. First Nat. Bank, 297 F. 353, C.A.9th, and Robinson v. Commissioner of Internal Revenue, 100 F.2d 847, C.A.6th, cert. denied, 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476. Although these principles are well recognized in many transactions between parties involved in litigation, they are not applicable to the Commission or the Court in the present case. The doctrine of equitable estoppel is not applicable to the Commission in correcting a mistake of law. Automobile Club v. Commissioner, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746, rehearing denied, 353 U.S. 989, 77 S.Ct. 1279, 1 L.Ed.2d 1147; Virginian Ry. Co. v. United States, 272 U.S. 658, 665-666, 47 S.Ct. 222, 71 L.Ed. 463; Crosley Corporation v. United States, 229 F.2d 376, 380, C.A. 6th. As stated hereinabove, although the recommendations of the Commission are entitled to great weight, the responsibility and authority to make allowances is placed upon the District Court. Woods v. City Bank Co., supra, 312 U.S. 262, 267, 61 S.Ct. 493, 85 L.Ed. 820; Vol. 6, Collier on Bankruptcy, 14th Edition, Section 13.02. Even if it be held that the Commission was estopped from changing its position in the matter, this could not operate as an estoppel against the District Judge, who may or may not follow its recommendation. See Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.
 
 
 17
 The Commission in reversing its position on the right of the Committee to be reimbursed for its payment of its counsel's out-of-pocket expenses states that as an adviser to the Court, it necessarily acts in the light of its continuing experience and that it would be remiss in its duties if, in 1961, it failed to advise the District Court of what it believes to be the correct view of the facts and law because ten years earlier, when it had not appreciated all the considerations bearing on the matter, it may have expressed a different view.
 
 
 18
 Its change in position was due to the following analysis which it made of the overall picture. Under Sections 241-243 of the Bankruptcy Act, Sections 641-643, Title 11, U.S.Code, the Committee and its attorney were each accorded autonomous standing and were authorized to apply separately for compensation for services rendered and for expenses incurred incidental to such services. Since the Committee counsel had been reimbursed by the Committee for its out-of-pocket expenses, counsel had no unpaid claim for which he could ask reimbursement, and the Committee's claim for reimbursement of its counsel's expenses necessarily rested upon the doctrine of subrogation, that is it became subrogated to the claim of its counsel upon its payment of the same. But subrogation is an equitable doctrine to be used when called for by the dictates of equity, good conscience and public policy. German Bank of Memphis v. United States, 148 U.S. 573, 580-581, 13 S.Ct. 702, 37 L.Ed. 564; Commercial Standard Ins. Co. v. American Emp. Ins. Co., 209 F.2d 60, 64, C.A.6th. Under the circumstances of this case and in view of the express prohibition contained in Section 249 of the Act, the Commission was of the opinion that subrogation should not be granted.
 
 
 19
 We are of the opinion that the District Judge did not abuse his discretion in accepting and following this recommendation of the Commission. We realize the severity of the rule under the circumstances in this case, as is well pointed out by counsel for appellant, particularly with respect to the members of the Green Committee continuing to serve on the Committee and the advancement by them of the necessary operating expenses after the compromise settlement of August 2, 1947. But, in the absence of estoppel, which we have held not applicable, we do not think the District Judge erred in enforcing the public policy inherent in the provisions of Section 249 of the Act. Finn v. Childs Co., supra, 181 F.2d 431, 441, C.A.2nd. As has been heretofore pointed out by this Court, as well as other Courts, trafficking in the securities of the debtor has been one of the most persistent evils in reorganization which Congress attempted to eliminate in its enactment of Section 249 of the Act. Young v. Potts, 161 F.2d 597, 600, C.A.6th; Surface Transit, Inc. v. Saxe, Bacon & O'Shea, supra, 266 F.2d 862, 868, C.A.2nd, cert. denied, 361 U. S. 862, 80 S.Ct. 120, 4 L.Ed.2d 103. Strict enforcement of the Section 249, although often resulting in an obvious financial hardship, is necessary in order to discourage and eliminate this evil. Vol. 6, Collier on Bankruptcy, 14th Edition, Section 13.18.
 
 
 20
 The judgment is affirmed.